UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                      No. 11-CR-20468
                                                      Hon. Arthur J. Tarnow
vs.                                             Hon. Gerald E. Rosen

BABUBHAI ("BOB") PATEL, R.Ph.,

                Defendant.
_____/

ORDER DENYING DEFENDANT PATEL'S MOTION
TO DISMISS INDICTMENT BASED UPON IMPROPER
<u>GRAND AND PETIT JURY SELECTION PROCESS</u>

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____May 30, 2012_____

PRESENT:  Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I. <u>INTRODUCTION</u>

Babubhai Patel is charged in a multi-defendant, multi-count health care fraud

indictment.  On February 1, 2012, Patel, who is Asian-Indian, filed a "Motion to Dismiss

Indictment Based Upon Improper Grand and Petit Jury Selection Process." His stated

intent in this Motion is to demonstrate  a discriminatory violation of the Jury Selection

and Services Act of 1968 and a violation of his constitutional right to equal protection and

due process after he is afforded an opportunity to "physically inspecting the master jury

wheel of the District Court."  This proposed inspection consists of "counting each of the

1

questionnaires. . . and tabulating the data from these questionnaires."   He also requests in this Motion that the Court enter an order allowing him to "present the testimony of the jury commissioner or clerk [and] any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence."

Pursuant to Eastern District of Michigan Administrative Order No. 00-AO-060, the normal scope of discovery with respect to information concerning jurors and potential jurors afforded a party seeking to challenge the composition of a grand and/or petit jury on the basis of race or ethnicity is limited to "juror number; race; and Hispanic ethnicity." This Administrative Order further provides that

> in the event that a party moves for the provision of juror information beyond that contemplated in this Administrative Order, such motion will be referred to the Chief Judge [for] review[] and ruling upon the propriety of providing any such additional juror information for good cause shown by the movant, on a case-by-case basis.

Administrative Order No. 00-AO-060.

Because Babubhai Patel's Motion seeks such additional juror information, it has been referred for a determination by this Court.[1]   Having reviewed the parties' briefs and

---

[1]      Although Defendant's motion is captioned as a motion to dismiss and requests at the outset that the Court dismiss the charges against him, it is clear from the motion and accompanying plea for relief, that Defendant's present objective is to secure information that he views as necessary to establish that there were statutory and constitutional infirmities in the juror selection process.  This information, in turn, would then be marshaled in support of a motion to dismiss.  Consequently, this Court views its inquiry as limited to Defendant's request for juror selection information and records, as opposed to the merits of any JSSA or constitutional challenges he might subsequently elect to pursue.  Nonetheless, and as discussed below, the substantive law governing such challenges has some bearing upon the Court's disposition of the present motion.

2

accompanying exhibits, the Court has determined that the relevant facts and legal arguments are adequately presented in these written submissions and oral argument would not aide the decisional process. Accordingly, Defendant's Motion will be decided "on the briefs." *See* E.D. Mich. Local Rule 7.1(e)(2).

## II. BACKGROUND

### A. THE MASTER JURY WHEEL

Under the juror selection plan adopted by the Judges of this District in 2000 and subsequently approved by the Judicial Council of the Sixth Circuit, potential jurors are drawn from a "master jury wheel" in which "each county within a division is proportionately represented." *See* Administrative Order No. 00-AO-083, Juror Selection Plan § (h)(2); *see also United States v. O'Reilly*, No. 05-80025, 2008 WL 115537, at *2-3 (E.D. Mich. Jan. 10, 2008) (Friedman, C.J.) (describing this District's current juror selection plan). The exact percentages of this mandated "proportional representation," in turn, are determined by reference to the numbers of registered voters in each county within the division. Upon applying this formula to the current master jury wheel for the Detroit division, which was created in February of 2011, it was determined that Wayne County residents were to comprise 38.013 percent of the master wheel, or 114,039 of the 300,000 names on this wheel. *See* Administrative Order No. 11-AO-006.

## III. DEFENDANT PATEL'S MOTION

Defendant Patel argues in his motion that the method for drawing jurors prescribed

by Administrative Order No. 11-AO-006 "inherently and systematically excludes Asians from the grand jury pools due to its sole reliance on voter registration lists," and that this exclusion violates the Jury Selection and Services Act, 28 U.S.C. § 1861, *et seq.* (the "JSSA"), and his Sixth Amendment right to an impartial jury.[2]  Patel does not, however, provide any facts to support these allegations.  Instead, he proposes that he be permitted to inspect the master jury wheel, including all questionnaires provided to potential jurors, so that he might demonstrate that "under-weighting Wayne County produces the discriminatory effect of under representing Asian and Indian residents of Wayne County on federal grand and petit juries."  He further seeks an order directing the Clerk of the Court to produce additional records bearing upon this District's process for juror selection, beyond the materials that are ordinarily available under Administrative Order No. 00-AO-060. and an order allowing him to "present the testimony of the jury commissioner or clerk . . . , any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence."

### III.  DISCUSSION

---

[2]      Defendant mischaracterizes Administrative Order 11-AO-006 in his assertion that the Order sets forth a process for selecting grand and petit juries in "sole reliance on voter registration lists."  As clearly set forth in the Administrative Order, the 300,000 names used to create the February 2011 Master Jury Wheel were selected at random from "voter registration lists [and] lists of licensed drivers and residents holding state identification cards for the nine counties which make up the Detroit Division. . . ."  *See* Administrative Order 11-AO-006. "For the purpose of determining the proportional representation" of each of the nine counties, only "the *number* of registered voters in each county" was used.  *Id.* (emphasis added).

A.      The Standards Governing Defendant's Motion

To the extent that a party seeks more detailed information and records regarding

this District's process for juror selection, and not merely the disclosure of juror number,

race, and Hispanic ethnicity, Administrative Order No. 00-AO-060 provides that such

requests will be reviewed on a "case-by-case basis," and will be granted only upon a

showing of "good cause."  As explained by former Chief Judge Lawrence P. Zatkoff, a

party may establish the requisite "good cause" by showing that the requested information

is necessary to prepare and present a motion challenging the jury selection process.

*United States v. Montini*, No. 03-80228, 2003 WL 22283892, at *3 (E.D. Mich. Sept. 3,

2002) (Zatkoff, C.J.); *see also O'Reilly*, 2008 WL 115537, at *3 (Friedman, C.J.)

Accordingly, to establish entitlement to the information sought through the present

motion, Defendant must show that these materials will be of assistance in proving either a

violation of the JSSA or a Sixth Amendment violation.

B.      Defendant Has Not Shown a Need for Information Beyond That Which Is
        Ordinarily Available in Order to Determine Whether the Jury Selection
        Process in His Case Violated the JSSA or His Sixth Amendment Right to an
        Impartial Jury.

As this Court previously has explained, "[t]he Sixth Amendment guarantee of an

'impartial jury' has been construed as encompassing the right to a jury drawn from a fair

cross section of the community."  *United States v. Brown*, 128 F. Supp. 2d 1034, 1038

(E.D. Mich. 2000) (internal quotations and citations omitted).  Likewise, the JSSA

articulates a "policy of the United States that all litigants in Federal courts entitled to trial

by jury shall have the right to grand and petit juries selected at random from a fair cross

section of the community in the district or division wherein the court convenes." 28

U.S.C. § 1861.

A claim that jury selection violates the "fair cross section" requirements of the

Sixth Amendment and the JSSA can be proven through direct or indirect evidence. *See*

*United States v. Ovalle*, 136 F.3d 1092, 1099 (6th Cir. 1998); *see also Brown*, 128 F.

Supp. 2d at 1039. Where, as here, there is no direct evidence that the jury selection

process used in this District invariably leads to the under representation of the groups

identified by Defendant Patel, Defendant must rely upon indirect evidence to sustain his

claim. Defendant's initial burden is to establish the three elements of a *prima facie*

showing of a "fair cross section" violation: "(1) that a 'distinctive group' is being

excluded from the jury pool; (2) that the representation of this group in venires from

which juries are selected is 'not fair and reasonable' in comparison to the group's

representation in the community at large; and (3) that this disparity is attributable to

systematic exclusion of the group in the jury selection process." *Duren v. Missouri*, 439

U.S. 357, 364, 99 S.Ct. 664, 668 (1979); *United States v. Buchanan*, 213 F.3d 302, 309-

10 (6th Cir. 2000); *Brown*, 128 F. Supp. 2d at 1039. Each of these elements must be

established in order to make out a *prima facie* case. *United States v. Allen*, 160 F.3d

1096, 1103 (6th Cir.1998); *United States v. Grant*, 2009 3275926 at *12 (S.D. Ohio

2009).

As a threshold matter, it is far from clear that one of the groups identified in

Defendant's motions – Wayne County residents – qualifies as a "distinctive group" whose

6

exclusion from a jury pool could establish the first prong of a *prima facie* case under the Sixth Amendment and the JSSA.   Although the Sixth Circuit has not spoken on this issue, a district court within this Circuit thoroughly surveyed the relevant case law and found it to be uniformly held "that residents of a geographic area are not a distinct, cognizable group based on their place of residence alone."  *United States v. Traficant*, 209 F. Supp. 2d 764, 780 (N.D. Ohio 2002); *see also United States v. Butera*, 420 F.2d 564, 572 (1st Cir. 1970) (holding that residents of a particular county do not qualify as a "distinctive group" for purposes of a fair cross section analysis), *overruled on other grounds by Barber v. Ponte*, 772 F.2d 982, 998 (1st Cir. 1985).  Rather, place of residence is relevant to a fair cross section analysis only to the extent that it serves as a "proxy for another, recognized distinct group."  *Traficant*, 209 F. Supp. 2d at 782.

For present purposes, it is unnecessary to decide whether, and to what extent, Defendant may pursue a fair cross section challenge based upon the purported under-representation of Wayne County residents in his or other pools of potential jurors formed pursuant to this District's juror selection plan.  Defendant's motion does not rest solely on this ground, but also cites Asian-Americans as a distinctive group that is under-represented.  It is clear that Asian-Americans qualify as a "distinctive group" whose alleged exclusion would satisfy the first prong of a *prima facie* case.  In its response brief, the Government has stipulated that Asian-Americans are in fact a "distinctive group." However, Defendant Patel provides no evidence that Asian-Americans have been excluded from the master jury wheel.  His arguments are based on mere speculation that

7

Wayne County residents are under-represented on the wheel, and, therefore, Asian-American residents of Wayne County must be under-represented in federal grand and petit juries.  Further, Defendant Patel makes no argument nor asserts any facts suggesting a connection between then number of Wayne County residents and the number of Asian-Americans on the master wheel.

The Government, in response to Defendant Patel's motion, has submitted statistics concerning the population of Wayne County and the nine counties that make up the Detroit Division, and statistics showing that Asian-Americans are not more heavily concentrated in Wayne County.  Specifically, the Government relies on data from the 2010 census published by United States Census Bureau and available to the public at www.census.gov.

According to the 2010 census, Wayne County has a population of 1,820,584, or approximately 37.7 percent of the 4,827,030 residents of the nine counties that make up the Detroit Division.  Given that Wayne County residents make up 38 percent of the master jury wheel, there is no clear case that Wayne County is under-represented in the proportional representation formula used to create the master jury wheel.

The census data similarly undermines Patel's assumption that a disproportionate share of the District's Asian-Americans reside in Wayne County.  According to the 2010 census, 2.5 percent of Wayne County residents identify themselves as "Asian or Pacific Islander"; this compares with 5.6 percent of Oakland County residents, 3.0 percent of Macomb County residents, and 7.9 percent of Washtenaw County residents.  Wayne

8

County, if anything, appears to have a lower percentage of self-identified Asian or Pacific Islanders than the other major counties in the Detroit Division.

The Government argues for a denial of Defendant's motion to dismiss stating that because Patel has cited no facts to support the key assertions upon which his motion rests -- i.e., (1) that Wayne County is under-represented in the master jury wheel, and (2) because Asian-Americans are more likely to reside in Wayne County than elsewhere in the Detroit Division, Asian-Americans are likely under-represented in the master jury wheel -- and because the census figures appear to flatly contradict those very propositions, he has failed to establish a violation of the Sixth Amendment or the JSSA. For present purposes, however, the question is not whether Defendant has made a *prima facie* showing of a fair cross section violation, but whether the additional information he seeks would aid him in establishing the elements of such a showing.  The Court concludes that it would not.

To make out the first element of a *prima facie* showing of a fair cross section claim, Defendant Patel would have to show that a "distinctive group" is being excluded from the jury pool.  The census data presented here shows that Wayne County residents have not have been excluded as this group is not under-represented in the master jury wheel.  Presumably, Plaintiff hopes that inspecting all questionnaires submitted by potential jurors and all other non-public jury records will show that Asian-Americans are under-represented in the pool.  However, inasmuch as Defendant has failed to provide *any* evidence that Wayne County residence is a proxy for an under-representation of

9

Asian-Americans the Court cannot approve the discovery Defendant seeks based on nothing more than the speculative assertions and unfounded assumptions contained in his motion.[3]  To hold otherwise would essentially sanction a "fishing expedition" every time a defendant requests discovery beyond that contemplated in Administrative Order 00-AO-060 based on nothing more than speculation and supposition, and would impose a heavy burden, in terms of time and cost, on the Court and it Jury Department.  *See United States v. Fieger*, No. 07-20414, 2008 WL 1902054 (E.D. Mich., Apr. 29, 2008) (Rosen, C.J.) (denying defendant's request for production of "all records and documents revealing the composition of the master jury wheel" where defendant suggested no basis for believing that the wheel might be the source of any systematic under-representation of a particular group in this District's jury pools, concluding that the defendant's request for materials bearing on the composition of the master jury wheel "resembles nothing more than a 'fishing expedition.'")' United *States v. O'Reilly*, 2008 WL 115537 (E.D. Mich., Jan. 10, 2008) (Friedman, C.J.) (denying defendant's motion for disclosure of non-public juror

---

[3]  Contrast *United States v. Fieger*, EDMI No. 07-20414, 2008 WL 1902054 (E.D. Mich., Apr. 29, 2008) (Rosen, C.J.) (defendant's request for juror discovery granted, in part, where defendant had provided some evidence that a substantial under-representation of Wayne County residents was likely to result in an under-representation of African-Americans through (1) census figures accompanying his motion which revealed that the County's residents were 41.8 percent African-American while the remaining eight counties from which potential jurors are drawn for the Detroit division have African-American populations of 12.5 percent or less, and (2) demonstrating the significant disparities between the percentages of Wayne County residents and African-Americans in the pool of prospective jurors in his case and the percentages of these groups in the overall population of the nine-county region from which the Detroit division draws potential jurors).

records, noting that if it were to allow the defendant to obtain this information, "it is

certain that defendants in the future will seek the same or similar information, which will

cause a tremendous administrative burden."); *see also United States v. Montini*, 03-80228,

2003 WL 22283892 (E.D. Mich. Sept. 3, 2002) (Zatkoff, C.J.)

<u>CONCLUSION</u>

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant's request that he be afforded an opportunity

to "physically inspect the master jury wheel of the District Court," to review the

information contained in all juror questionnaires, and to obtain "the testimony of the jury

commissioner or clerk [and] any relevant records and papers not public or otherwise

available used by the jury commissioner or clerk, and any other relevant evidence"

bearing upon the composition of the master jury wheel is DENIED.  Defendant,

however, may be provided the juror information contemplated under Administrative Order

No. 00-AO-060, i.e., "juror number, race, and Hispanic ethnicity," for the pool of jurors to whom

summonses are issued for the trial of his case.  In addition, Defendant may be provided access to

the records and papers for the previous master jury wheel in accordance with 28 U.S.C . § 1868.

Dated: May 30, 2012                                    s/Gerald E. Rosen
                                                       Gerald E. Rosen
                                                       Chief Judge, United States District Court

11

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 30, 2012, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137