UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

D-1 BABUBHAI PATEL

        Defendant.

_____/

Case No. 11-20468-1

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE MONA K. MAJZOUB

**ORDER DENYING DEFENDANT'S MOTION TO PRODUCE [607]**

Defendant Babubhai Patel moves to subpoena certain documents prior to sentencing. For the reasons stated below, Defendant's Motion to Produce [607] is DENIED. Defendant's Motion to Amend/Correct Motion for Judgment Notwithstanding the Verdict [605] and Motion for Reconsideration [669] will be decided by the Court following full briefing on Defendant's Motion for Reconsideration.

**Procedural and Factual Background**

Beginning on July 3, 2012, a jury trial was held in which Defendant Babubhai Patel, along with six other defendants, was tried for conspiracy to commit health care fraud, conspiracy to distribute controlled substances, and other related offenses. On August 10, 2012, the jury found Defendant Babubhai Patel guilty of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349. Five co-defendants were also found guilty of conspiracy to commit health care fraud: Komol Acharya, Lokesh Tayal, Ashwini Sharma, Viral Thaker, and Brijesh Rawal. The jury was unable to reach a verdict with respect to co-defendant Harpreet Sachdeva.

On October 8, 2012, Defendant Patel filed a Motion for Judgment Notwithstanding the Verdict or For a New Trial [597]. On December 10, 2012, the Court issued an Order [637] denying Defendant Patel's Motion for Judgment Notwithstanding the Verdict.

On October 17, 2012, Defendant Patel's attorneys, Joseph Niskar and Harold S. Fried, filed a motion [606] requesting that they be permitted to withdraw from representation of Patel due to Patel's wish that they no longer represent him. This motion was granted on October 26, 2012. Patel's new counsel filed the instant Motion to Produce as well as a Motion to Amend/Correct the Motion for Judgment Notwithstanding the Verdict on October 17, 2012. Defendant filed a Motion for Reconsideration [669] on January 2, 2013.

## Motion to Produce [607]

A party may seek a pretrial subpoena in a criminal case after the conclusion of trial. To do so a party must demonstrate:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). The consideration of such a motion is a "discretionary, case-by-case inquiry." *United States v. Bergeson*, 425 F.3d 1221, 1225 (9th Cir. 2005). A court may quash the subpoena if compliance would be "unreasonable or oppressive." Fed. R. Crim. Proc. 17(c).

Here, Defendant Patel seeks production of "records of transactions with pharmaceutical distributors, including the McKesson, Anda, and AmerisourceBergen corporations . . . ." These documents are identified in an eighteen-page unnotarized affidavit of Defendant Patel [612] filed on October 30, 2012, and in a supplemental affidavit attached to Defendant's Reply [617].

**Evidentiary and Relevant**

With respect to the first factor, Defendant alleges that the records sought "would conclusively demonstrate that he did not commit the charged offenses . . . [and would] refute the

2

allegations that he retained the proceeds from pharmaceutical products that were returned to the suppliers." Mot. at 2.

The government, in response, notes that Defendant was indicted for billing prescription drugs to Medicare that were not dispensed. The drugs were later returned to the wholesalers, such as McKesson, Anda, and Amerisource Bergen, sold to other pharmacists, or used to stock a new pharmacy. Government's Sentencing Mem. at 3. A separate scheme also involved physicians affiliated with Defendant writing prescriptions for controlled substances for patients who did not require the drugs, which were then filled at Defendant's pharmacies. Government's Sentencing Mem. 3. These controlled substances would then be used as kickbacks to patients and patient recruiters.

The government argues that Defendant was convicted of crimes that are not dependent on what happened to the pharmaceuticals after they were not dispensed to patients, only that they were not dispensed and that Medicare and Medicaid were fraudulently billed. In its sentencing memorandum, the government contends that Patel's pharmacies fraudulently billed $2.9 million to Medicare and Medicaid through the "Visiting Doctors of America" program, testimony at trial having established that prescription pads from VDA were regularly used for billed-but-not-dispensed drugs. Government's Sentencing Mem. at 9. The government also estimates another $18,955,869 in fraudulent billing based on comments made by Patel and a percentage of the billings of the Patel pharmacies. None of these amounts, however, are based upon records from the pharmaceutical wholesalers that Defendant seeks to subpoena. Defendant argues, primarily through a supplemental affidavit attached to his Reply [627], that the McKesson records would "provide us details of dispensing of drugs" because when a "pharmacy dispensed a drug that was sourced from McKesson, the pharmacist would enter the relevant information in the McKesson database that

3

would not only record the data regarding dispensation of the drug but also contains records of the patient or other authorized person receiving the drug, including the patient signature for receipt of the drug and records of any subsequent returns." Def.'s Reply Br., Ex. 1 at 2-3.

The records that Defendant identifies in his affidavit and the quotes noted above actually appear to be the records of his own pharmacies and pharmacists. Defendant appears to have had access to his own records regarding transactions with McKesson and other pharmaceutical wholesalers. The government notes that the invoices seized with "billed but not dispensed" drugs were introduced at trial and that "[a]ll of the invoices seized from the defendant's pharmacies were made available for review." Government's Resp. at 2. Further, a DEA investigative file was turned over to the defense. *Id.* The government also contends that the wholesaler records show only the type and amount of drugs ordered and returned, and do not indicate whether particular clients received or did not receive drugs that were prescribed and billed.
Thus, between the records of his own pharmacies and evidence turned over by the government, Defendant appears to have received ample discovery on this issue.

Moreover, the Court notes that whether Defendant returned drugs that were billed but not dispensed, or retained the proceeds from said returns, is not relevant to his guilt at trial or his sentencing. Thus, his claim that additional records will reveal evidence regarding whether certain drugs were returned is not relevant. Similarly, to the extent that Defendant avers that the records he seeks will reveal patient signatures and receipts illustrating that drugs were dispensed, extensive testimony and evidence at trial indicated that patient signatures were falsified and that drugs were not actually dispensed. As this fact was a key piece of evidence that the jury was required to find proven beyond a reasonable doubt to convict Defendant of conspiracy to commit health care fraud, the fact that the records Defendant seeks to obtain would show another copy of patient signatures is of little aid to him.

4

**Not Otherwise Procurable**

With respect to the second factor, that the document were "not otherwise procurable in advance of trial by exercise of due diligence," Defendant admits that "the document could have been procured in advance of the motion," but "attributes any lack of diligence to his former counsel." Def.'s Mot. at 3. Defendant alleges that "from the outset" of his indictment he instructed his former attorneys "to subpoena the complete ordering, billing, dispensation, patient signatures, and return of drug history from McKesson . . . for all of the above pharmacies for the relevant time period." Def.' Reply Br., Ex. 1 at 2. Defendant does not explain why, despite his apparent repeated and insistent requests to counsel that he alleges were simply ignored or refused, he chose to forego raising this issue prior to his conviction. The Court therefore finds that the records sought in the motion to product were procurable prior to the instant motion, and that Defendant did not exercise due diligence in seeking the records.

**Inability to Prepare for Trial/Sentencing**

With respect to the third factor, that the party cannot prepare for trial (or, in this case, sentencing and a motion for a new trial) without production, Defendant argues that his motion for a new trial based on ineffective assistance of counsel cannot be successful without the records. Defendant also suggests that the records could be used to "discredit the loss amount he anticipates the government will advance."

However, as noted above in the section concerning relevancy, the loss amounts discussed by the government in its sentencing memorandum are not related in any way to whether or not Defendant did, in fact, return drugs to pharmaceutical wholesalers, but are rather estimates from a certain percentage of total billing based on the records of Defendant's own pharmacies. In turn, that percentage of billing is based upon comments made by Defendant himself. Whether the Court

5

ultimately accepts the government's estimation or not, the records Defendant seeks are not relevant to this question and are unnecessary for preparation for sentencing.

Defendant also argues that the records he seeks are necessary to support his pending Motion to Amend/Correct his Motion for Judgment Notwithstanding the Verdict based on ineffective assistance of counsel. Defendant argues that lack of the McKesson records "deprive[s] [Defendant] of the opportunity to demonstrate that the drugs were, in fact, dispensed to the customers." As noted above, Defendant's pharmacies possessed records suggesting that the drugs billed for were dispensed, including patient/assisted living facility manager signatures and pharmacist records.

However, the jury heard extensive evidence that these records were falsified, and apparently found this fact to be proven beyond a reasonable doubt when it convicted Defendant of conspiracy to commit health care fraud. Records from the pharmacy wholesaler, that were apparently dependent on information entered by Defendant's pharmacists and duplicative of records in Defendant's pharmacies, would not have added to Defendant's case,[1] particularly when "[a]ll of the invoices seized from the defendant's pharmacies were made available for review." Government's Resp. at 2. Further, the government argues that the wholesaler records show only the type and amount of drugs ordered and returned, and do not indicate whether particular clients received or did not receive drugs that were prescribed and billed.

Accordingly, the Court finds that Defendant's ability to prepare for sentencing and for the filing of his Motion for Judgment Notwithstanding the Verdict based on ineffective assistance of counsel would not be affected by the records sought in his Motion to Produce.

---

[1]As noted above, Defendant seeks records that were allegedly made when a "pharmacy dispensed a drug that was sourced from McKesson, the pharmacist would enter the relevant information in the McKesson database that would not only record the data regarding dispensation of the drug but also contains records of the patient or other authorized person receiving the drug, including the patient signature for receipt of the drug and records of any subsequent returns."

6

**Good Faith**

With respect to the fourth factor, that the application be made in good faith and not as a "fishing expedition," Defendant argues that his motion "is made in good faith and not for the purposes of an unwarranted angling expedition." *Id.* However, the Court finds that Defendant's motion to produce appears to be more of a "fishing expedition to see what may turn up." The records that Defendant seeks appears to be duplicative of invoices from his own pharmacies that were provided to Defendant's attorneys. Defendant argues that his attorneys "may have been afforded an opportunity to go and review the McKesson drug invoices in possession of the Government (that were seized from the "Patel Pharmacies"), [but] I personally was never afforded this opportunity." Defendant does not present, and the Court is not aware, of any precedent that requires that a defendant personally see all evidence to be presented against him when this evidence is made available to his attorneys.

**Conclusion**

Accordingly, the Court finds that Defendant fails to meet any of the four factors required in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974). As a failure to meet any of the four factors would be fatal, Defendant's Motion to Produce [607] is **DENIED**.

**SO ORDERED**.

                                                                              s/Arthur J. Tarnow  
                                                                              ARTHUR J. TARNOW  
                                                                              SENIOR UNITED STATES DISTRICT JUDGE

Dated: January 15, 2013