ORIGINAL

AO 243   (Rev. 2/95)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | |
|---|---|---|
| Name of Movant<br>Babubhia Patel | Prisoner No.<br>46049-039 | Case No.<br>11-cr-20468 |
| Place of Confinement | | |
| Federal Correctional Institution, P.O.Box 1000, Milan, MI. 48160 | | |

| UNITED STATES OF AMERICA | V. | BABUBHAI PATEL<br>(name under which convicted) |
|---|---|---|

**MOTION**

1. Name and location of court which entered the judgment of conviction under attack
   **United States District Court, Eastern District Of Michigan, Southern Division. Honorable Arthur J. Turnow.**

2. Date of judgment of conviction
   **February 1, 2013.**

3. Length of sentence
   **204 Months.**

4. Nature of offense involved (all counts)
   **18 U.S.C. §1349 conspiracy to commit health care fraud (Count 1), 18 U.S.C. §1347 and 2 aiding and abetting health care fraud (Counts 2-14); 21 U.S.C. §846 conspiracy to distribute controlled substance (Count 15); Distribution of a controlled substance and aiding and abetting 21 U.S.C. §841(a) and §2. (Counts16-34).**

5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   **N/A**

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐   No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒   No ☐

FILED
SEP 11 2015
CLERK'S OFFICE
DETROIT

(2)

AO 243   (Rev. 2/95)

9.   If you did appeal, answer the following:

    (a) Name of court   **Sixth Circuit Court Of Appeals.**

    (b) Result   **Conviction and sentence affirmed.**

    (c) Date of result   **October 21, 2014.   EN BANC.**

10.   Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
Yes ☐   No ☒   **No petition for certiorari was filed.**

11.   If your answer to 10 was "yes," give the following information:

    (a)  (1) Name of court

        (2) Nature of proceeding

        (3) Grounds raised

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐   No ☐

        (5) Result

        (6) Date of result

    (b)  As to any second petition, application or motion give the same information:

        (1) Name of court

        (2) Name of proceeding

        (3) Grounds raised

AO 243   (Rev. 2/95)

(4)   Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☐

(5)   Result

(6)   Date of result

(c)   Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1)   First petition, etc.          Yes ☐   No ☐
(2)   Second petition, etc.          Yes ☐   No ☐

(d)   If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12.   State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)   Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b)   Conviction obtained by use of coerced confession.

(4)

AO 243    (Rev. 2/95)

(c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e)  Conviction obtained by a violation of the privilege against self-incrimination.
(f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g)  Conviction obtained by a violation of the protection against double jeopardy.
(h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i)  Denial of effective assistance of counsel.
(j)  Denial of right of appeal.

A.  Ground one:   **Trial counsel was ineffective for failing to challenge Count One prior to trial because of duplicious charging**

Supporting FACTS (state *briefly* without citing cases or law):
See SUPPORTING FACTS ON ADDITIONAL FOLLOWING PAGES.

B.  Ground two:   **Trial counsel was ineffective for failing to investigate develope and present an available defense.**

Supporting FACTS (state *briefly* without citing cases or law):
See SUPPORTING FACTS ON ADDITIONAL FOLLOWING PAGES.

C.  Ground three:   **Trial counsel was ineffective for not filing motion before trial for severance under Rule 14 Fed. R. Crim. P. where counsel knew other defendant's counsel would point finger of guilt at Patel in front of jury.**
Supporting FACTS (state *briefly* without citing cases or law):

See SUPPORTING FACTS ON ADDITIONAL FOLLOWING PAGES.

AO 243     (Rev. 2/95)

D.  Ground four:  Trial counsel was ineffective for failing to object when trial judge interfered with the jury's fact finding function by not allowing government witness to answer jury's questions.

Supporting FACTS (state *briefly* without citing cases or law):

See SUPPORTING FACTS ON ADDITIONAL FOLLOWING PAGES.

ALSO SEE GROUND FIVE  ON ADDITIONAL FOLLOWING PAGES.
ALSO SEE GROUND SIX   ON ADDITIONAL FOLLOWING PAGES.
ALSO SEE GROUND SEVEN ON ADDITIONAL FOLLOWING PAGES.
ALSO SEE GROUND EIGHT ON ADDITIONAL FOLLOWING PAGES.
ALSO SEE GROUND NINE ON ADDITIONAL FOLLOWING PAGES.
ALSO SEE GROUND TEN ON ADDITIONAL FOLLOWING PAGES.

13.   If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them:

All grounds raised are ineffective assistance of counsel claims that are best raised in a 2255 motion.

14.   Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐    No ☐

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)  At preliminary hearing  Martin Crandel

(b)  At arraignment and plea  Martin Crandel

(c)  At trial  Joseph Niskar

(d)  At sentencing  Robert L. Sirianni, Jr., Browhstone P.A., 400 North New York Avenue, Suite 215, Winter Park, FL. 32789

(6)

AO 243    (Rev. 2/95)

    (e)  On appeal    **Robert M. Brownlee, Brownstone P.A., 400 North York Avenue, Suite 215, Winter Park, Fl. 32789.**

    (f)  In any post-conviction proceeding    **PRO-SE.**

    (g)  On appeal from any adverse ruling in a post-conviction proceeding    **N/A**

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes  [X]    No  [ ]

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes  [ ]    No  [X]

    (a)  If so, give name and location of court which imposed sentence to be served in the future:

    (b)  Give date and length of the above sentence:

    (c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes [ ]  No [ ]

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

**9/1/2015**
_____
Date

_____
Signature of Movant

(7)

<u>GROUND ONE:</u>     Trial counsel was ineffective for failing to challenge Count One prior to trial where Count One charged two seperate and distinct conspiracies that consisted of duplicious charging.

<u>FACTS THAT SUPPORT GROUND ONE:</u>     Defendant Babubhai Patel is charged in Count One of the indictment (11-CR-20468) with conspiracy to commit Health Care Fraud in violation of 18 U.S.C. §1349, for submission of false and fraudulant claims to medicare and medicaid, and provate insurance companies. Count One also charges a second conspiracy for soliciting, offering, and paying of beneficiaries kickbacks and bribes.

According to Count One, the conspiracy has two primary purposes (1) submitting false and fraudulant claims and (2) offering and paying kickbacks and bribes. Conspiracy to submit false and fraudulant claims and conspiracy to offer bribes and paying kickbacks are two seperate and distinct conspiracies both with different criminal acts and objectives. On its face the indictment charges Babubhai Patel was a member of both conspiracies. Count one is "duplicious" and must be dismissed. Trial counsel was ineffective for failing to challenge Count One prior to trial. It cannot be determined whether Patel's conviction on Count One rests on only one of the offenses charged or both, or whether the jury's verdict in regards to either offense was unanimous.

SEE MEMORANDUM OF LAW AND FACT IN SUPPORT OF GROUND ONE
ATTACHED HERETO.

8.

GROUND TWO:    Trial counsel was ineffective for failing to
investigate available exculpatory evidence, interview and call
witnesses, develope and present available defense and challenge
the government's case through the advisarial process.

FACTS THAT SUPPORT GROUND TWO:    Prior to trial Patel explained
to his trial counsels the relation and importance of McKesson
Pharaceutical Corporation to his criminal charges. Patel instructed
his attorney's to obtain a Subpeona directing McKesson Corporation
(hereinafter refered to as McKesson) to provide defense counsel
with a copy of records maintained by McKesson that pretained to
business transactions between McKesson and the pharmacies owned
by Babubhai Patel, including (1) purchasing orders (2) billing
records (3) medication dispensing records (4) patients signatures
(5) record of drugs returned to McKesson from Patel owned pharmacies
for return credit (6) records of McKesson billing Medicare and
Medicaid, Bule Cross and Blue Shield Insurance Company, on
behalf of Pharmacies owned by Patel and (7) Names and contact
information of McKesson Record Keepers.

Without obtaining a Subpeona for McKesson records or
investigationg McKessons connection and importance to Patel's
Health Care Fraud charges trial counsel Joseph Niscar told Patel
that he would have the McKesson records befōr  trial. As Patel's
trial date approached Patel became concerned that his trial
counsel had not obtained the McKesson records and had not
interviewed any of McKesson Record Keeping employees. Mr Niskar
told Patel that defense counsel Mr. Harold Gurewitz was obtaining
the McKesson records from the government prosecutors Mr. Wayne

9.

Pratt and John Neal. Patel relied on Mr. Niskars' advise that
he would have the McKesson records before trial. Prior to trial
Patel repeatedly asked Mr. Niskar where are the McKesson records'
and why haven't you interviewed any of the McKesson Record Keepers
and other McKesson employees relative to the Health Care Fraud
charges. Trial was commenced without the McKesson records or the
prospect of any McKesson employee's being called as defense witnesses.

Three weeks into trial Patel told Mr. Niskar if you don't
ask where are the McKesson records I am going to stand up and
tell the trial judge (Judge Tarnnow) that my attorney's are not
prepared because he didn't subpeona the McKesson records and he
has not prepared my defense that he promised to do. At that time
Mr. Niscar confered with attorney Harold Guerwitz about the McKesson
records. Mr. Gurewitz interupted the trial proceeding and raised·
the McKesson record issue with the trial judge and the following
was had on the record:

> MR. GUREWITZ:    I have made a request -- I did this at the
> very beginning of trial -- that the Government provided me
> with information relating to the Government's administrative
> investigation of the drug company -- pharmaceutical company,
> McKesson, and the representative Cindy. (Trial Transcript,
> Vol. 14, page 17, lines 21-25).

It is clear from the record that Patel's counsel Mr. Niscar
did not investigate McKesson Pharmaceutical Corporation's relation
and involvement in the Health Care Fraud charges against Patel,
nor did he interview any of the McKesson Record Keepers concerning
Patel Pharmacies business operations with McKesson.

SEE MEMORANDUM OF FACT AND LAW IN SUPPORT OF GROUND TWO
ATTACHED HERETO THIS 2255 MOTION.

<u>GROUND THREE:</u>      Trial counsel was ineffective for failing to file pre-trial motion for severance under Rule 14 Fed. R. Crim. P., where counsel knew other defendant's counsel would be pointing finger of guilt at Patel in front of jury, and ineffective for failing to move for a mistrial when other counsel inculpitated Patel in front of the jury.

<u>FACTS THAT SUPPORT GROUND THREE:</u>

Prior to trial Patel's defense counsel Mr. Niskar knew that other defendant's attorney's would be pointing the finger of guilt at Patel in front of the jury by accusing Patel of committing criminal acts in an attempt to exonerate their clients. In an attempt to exonerate his client Komal Acharya, defense counsel James W. Burdik asked the government's witness Chetan Gujarathi questions on cross-examination that were designed to inculpitate Patel in front of the jury. The following cross-examination between Mr. Burdick and Chetan Gujarathi was had:

MR. BURDICK: So, would you take a look at those, please.

Starting with KA o3A, you've already identified that document with the purported signature of Komal Acharya. Correct?

CHETAN GUJARATHI:   Yes.

MR. BURDICK:   Which you do not recognize as her signature, correct, based on the evidence?

CHETAN GUJARATHI:    Yes, based on the evidence.

MR. BURDICK:   On the documents, yes.

And now KA 03B, for Baker, there is a signature here as well and the name of an individual. Correct?

11.

CHETAN GUJARATHI:     Yes.

MR. BURDICK:     And what is the signature? What is the name
of the individual?

CHETAN GUARATHI:     The signature is for Babubhai Patel and
the name is Babubhai Patel.

MR. BURDICK:     Does the printing of his name look familiar
to you?

CHETAN GUJARATHI:     Yes.

MR. BURDICK:     And can you identify who printed that?

CHATAN GUJARATHI:     Mr. Patel, Babubhai Patel.

MR. BURDICK:     And going back to KA 03A, the purported
signature of Komal Acharya is -- appears to be witnessed by
an individual. Correct?

CHETAN GUJARATHI:     Yes.

MR. BURDICK:     Can you see the signature that appears to be
witnessing that purported signature of Komal Acharya?

CHETAN GUJARATHI:     Yes.

MR. BURDICK:     And whos signature is that?

CHETAN GUJARATHI:     It's Mr. Babubhai Patel.

MR.BURDICK:     Is that signature of Mr. Patel's the same on
Sub A and Sub B?

CHETAN GUJARATHI:     Yes.

MR. BURDICK:     Thank you.

(See Trial Transcript, Vol. 16, pages 102 thru 104).

Mr. Burdick in an attempt to show Babubhai Patel's guilt
manipulated the government's witness  Chetan Gujarathi in an attempt
to shift the guilt away from his client Komal Acharya. Mr. Burdick

12.

solicited testimony from Agent Parkinson to show the jury that
Babubhai Patel had forged his client Komal Achatya's signature
on a "dummy tax return" and the signed his own name witnessing
that it was Komal Acharya that signed the dummy tax return. The
following cross-examination of Agent Parkinson was had:

MR. BURDICK:      So, Somil and Babubhai Patel are talking.
Correct?

AGENT PARKINSON:      Yes.

MR BURDICK:      And at the very beginning, Somil says,
"Listen in your e-mail I have sent for Komal". Correct?

AGENT PARKINSON:      Yes.

MR. BURDICK:      And further down, the fifth line up from
the bottom -- do you have it there?

AGENT PARKINSON:      Yes.

MR. BURDICK:      He says, "Only for Komal, only for Komal,
a dummy". Correct?

AGENT PARKINSON:      Yes. (Trial Transcript, Vol. 14, page 41).

MR. BURDICK:      And what they are talking about is putting
together a dummy corporation with Komal's name on it.
Correct?

AGENT PARKINSON:      I don't know if it was a corporation
or some kind of a dummy tax return form.

MR. BURDICK:      Tax return?

AGENT PARKINSON:      Tax return.

MR BURDICK: I think you are correct. It was a dummy
tax return.

Was there anything in there that says, by anybody,

13.

I've talked to Komal and this is what she wants us to do?

AGENT PARKINSON:     No.

MR BURDICK:     Is there anything in there that says, since Komal knew all about our billing for drugs and not dispensing them, this is what she would like for us to do?

AGENT PARKINSON:     No.

## MR. BURDICK SERVED AS A PRIVATE PROSECUTOR FOR THE GOVERNMENT

By soliciting testimony from government witnesses Chetan Gujarathi and Agent Tyler Parkinson that Patel forged Komal's name on a dummy tax return and was forging Komal Acharya's name on other documents, Mr Burdick was acting as a private prosecutor for the government. Mr. Burdick also incriminated Patel in front of the jury by asking Agent Parkinson "Is there anything in there that says, since Komal knew all about our billing for drugs and not dispensing them, this is what she would like us to do". (Vol. 14, page 42, lines 11-13). Mr. Burdick's question to Agent Parkinson sent a clear message to the jury that Patel was "billing for drugs and not dispensing them". And Agent Parkinson agreed with Mr. Burdick. Here Mr. Burdick was not merely finger pointing but was creating and introducing evidence of Patel's guilt in front of the jury on behalf of the government.  Agent Parkinson was the government's witness and his testimony was evidence and not just agreement to slanderous questions asked by Mr. Burdick. Mr. Burdick's questions and Agent Parkinson's answers was evidence that the jury considered in its

14.

fact-finding function and contributed to the jury's verdict of guilty against Patel. Mr Burdick was the best prosecutor the Government had in the case against Patel.

Patel's trial counsel Mr. Niskar just stood by and failed to raise an objection to Mr. Burdick's line of questions or failed to re-cross-examine government witnesses Chetan Gujarathi and Agent Tyler Parkinson in an attempt to limit the damage Mr. Burdick had to Patel's defense. Based on his confering with Mr. Burdick prior to trial Mr.Niskar knew that Mr. Burdick and other defense counsel was going to present a antagonistic defense on behalf of their clients.

On further cross-examination of government witness Agent Parkinson Mr. Burdick tailored his questions to extract answers from Parkinson to show the jury that Pharmaceutical Corporation CVS Caremark would not let Babubhai Patel service Caremark patients at Patel Pharmacies based on Caremark's investigation of Patel Pharmacies. The following cross-examination of Agent Parkinson was conducted by Mr. Burdick:

MR. BURDICK:    And do you know, that as a consequence of this investigation, that Caremark wouldn't let Babubhai Patel, for one reason or another, service the Craemark patients. Correct?

AGENT PARKINSON:    Yes, at certain pharmacies.

MR. BURDICK:    Okay. At pharmacies with the name Patel on them. Correct?

AGENT PARKINSON:    I don't know all the exact pharmacies.

15.

MR. BURDICK:     But you do know that there was conversation afterconversation about the need for putting pharmacies in different people's names so that he could -- his business could still get Caremark patients. Right?

AGENT PARKINSON:     I mean, I know of one that was presented today. I don't know if any --

MR. BURDICK:     Okay. And we know, do we not, that another witness has testified for the Government earlier in the case in which he says that he met Mr. Patel at some place or other, and he ended up with a pharmacy in his name without having any knowledge of it. Correct?

I can't recall his name right now.

AGENT PARKINSON:     Yes.

MR. BURDICK:     You recall that. You've talked to that person, right, as case agent, co-case agent?

AGENT PARKINSON :     Yes, I have.

MR.BURDICK:     Okay. So, you know that he used  different people's names just -- even without their knowledge or maby with their later knowledge, just to have different names owning the corporations. Correct.

AGENT PARKINSON :     Yes.  (See Trial Transcript, Volume 22, pages 89-90).

Here Mr. Burdick was actually, putting words in the Government's witness mouth with his line of leading questions and prejudicing Patel's defense in ways the government's attorney's would not have been allowed to do. After the jury

16.

heard Mr. Burdick's cross-examination of Government witnesses concerning criminal acts alleged committed by Patel no amount of jury instructions could have cured the prejudice to Patel's defense. Here Patel was prosecuted by government prosecutors and his codefendant's attorneys. The witnesses testimony was evidence that the Court could not instruct the jury to disregard.

SEE MEMORANDUM OF FACT AND LAW IN SUPPORT OF GROUND THREE ATTACHED HERETO THIS 2255 MOTION.

GROUND FOUR:      Trial counsel was ineffective for failing to
object when trial judge intefered with jury's fact finding
function by not allowing government witness to answer jury's
questions.

FACTS THAT SUPPORT GROUND FOUR:

During the direct-examination and cross-examination of
government witness F.B.I. Agent Lafell Peoples the jury sent
several written questions to the trial judge (Judge Tarnow) that
the jurors wanted the witness Agent Peoples to answer. The first
two questions the jurors presented to Agent Peoples are as
follows:

THE COURT:      Allright the first set of questions: "Why
didn't the government request tax documents from drug companies"?

"Why didn't the government subpoena all of Patel records,
expenses, cash receipts and books in question"? (See Trial
Transcript, Voulme 21, page 72, lines 15-19).

Government prosecutor Mr. Wayne Pratt responde to the jurors
questions as follows:

MR. PRATT:      The first two questions about why the
government didn't do things are inappropriate. That's questions
that be addressed to us, and we are not witnesses. (See Trial
Transcript, Volume 21, Page 73, lines 1-4).

After Mr. Pratt responded that the jury's questions were
inappropriate for for Agent Peoples Patel's trial counsel Mr.
Niskar did not object to the government's argument that the
jurors questions were inappropriate to be asked of witness Agent

18.

peoples.

After the jurors returned to the courtroom the trial judge (Judge Tarnow) responding to the jurors questions stated the following:

> THE COURT:     Everybody is in their places. We have
> some questions from the jurors. The first two questions
> about why the government did or did not do things would
> require answers from the attorney's. The attorneys are
> not witnesses. So they will not be asked. (See Trial
> Transcript, pages 75-76, lines 24-25, and lines 1-3).

After the trial judge told the jurors their questions would not be answered by the witness Agent Peoples Mr. Niskar again failed to raise an objection that the trial judge was interfering with the jury's fact finding function by not allowing the witness Agent Peoples to answer the jury's questions. Mr. Niskar was ineffective for failing to raise an objection to the trial judge's refusal to present to jury's questions to Agent Peoples.

SEE MEMORANDUM OF FACT AND LAW INSUPPORT OF GROUND FOUR
ATTACHED HERETO THIS 2255 MOTION.

GROUND FIVE:     Trial counsel was ineffective for failing to
request a mistrial when trial judge interfered with the jury's
fact finding function that denied Patel a fair trial.

FACTS THAT SUPPORT GROUND FIVE:

When the trial judge refused to submit the jury's questions
to the government's witness Agent LaFells People Patel's trial
counsel Mr. Niskar took no actions to protect Patel's interests
in having Agent Peoples answer the jury's questions. As previously
shown in GROUND FOUR, the trial court interfered with the jury's
fact finding function by not allowing Agent Peoples to answer the
jury's questions. The questions submitted by the jury to Agent
Peoples was of great importance to Patel's defense and Agent
Peoples answer would have answered the question everyone was asking
including the jury "Why didn't the government obtain the pharmaceutical
company records"? (See Trial Transcript, Volume 21, page 72, lines
15-17). Even the trial judge (Judge Tarnow) asked the government
prosecutors, "where are the McKesson records". (See Trial Transcript
Pages 174-176) And trial counsel Mr. Gurewitz requested the
McKesson records before trial and renewed that request three weeks
into trial when the Government prosecutors had failed to provide
the McKesson records. (See Trial Transcript, Volume 14, page 171,
lines 21-25). When the trial judge refused to submit the jury's
questions to Agent Peoples Patel trial counsel Mr. Niskar should
have asked for a mistrial but failed to do so based on the court's
judicial misconduct. Judge Tarnow is a very experienced trial
judge and knew or should have known - under the circumstances -

20.

that by not allowing the government witness Agent Peoples to

answer the jury's question that was relevant to the government's

case against Patel that the Court was interfering with the jury's

fact-finding-function delegated to the jury under the Sixth

Amendment right to trial by jury. The trial court's interefence

with the jury's fact finding function denied Patel a fair trial.

SEE MEMORANDUM OF FACT AND LAW IN SUPPORT OF GROUND FIVE
ATTACHED HERETO THIS 2255 MOTION.

<u>GROUND SIX:</u>      Trial counsel was ineffective for failing to investigate, interview, and call witnesses for the defense.

<u>FACTS THAT SUPPORT GROUND SIX:</u>

Prior to trial Patel explained to his trial counsel Mr. Joseph Niskar that he had a witness defense based on the Mckesson Corporation Employee's testimony concerning the procedures used by McKesson to insure against fraud and procedures used by McKesson for allowing returned medications and procedures used by McKesson for billing Medicaid, Medicare and Blue Cross and Blue Shield Insurance Company on behalf of its pharmacy customers such as Patel Pharmacies.

Patel also explained to Mr. Niskar the importance of his investigation and interviewing Medicaid, Medicare and Blue Cross and Blue Shield "beneficiaries" who had purchased their medications at a Patel Pharmacy.

<u>WHAT MCKESSON EMPLOYEES TESTIMONY WOULD SHOW</u>

If trial counsel would have call McKesson Employees to testify for the defense that testimony would have shown  the following procedures utilized by McKesson in providing services to its customers such as Patel Pharmacies, (a) that Mckesson Corporation billed Medicaid, Medicare and Blue Cross and Blue Shield on behalf of Patel Pharmacies, that Patel Pharmacies did not bill any Government Agencies or private insurance companies, (b) that McKesson Corporation had in place a "failsafe" security system that prevented its pharmacy customers from committing fraud through the McKesson Corporation by "billing but not dispensing"

23.

medications such as the Goverment alleged in the indictment
against Babubhai Patel, and (c) that Mckesson allowed medications
to be returned from pharmacies such as Patel Pharmacies but that
no cash money would be paid for any returned medications. Returned
medications would only realize a credit toward the future purchase
of medications from McKesson and there would only be a 75% credit
for the returned medications and the pharmacies returning the
medications would lose 25% on their returned medications.

The McKesson Corporation Employees testimony would show that
the Government's alleged "bill but not dispense" scheme Patel was
charged with was an impossibility and that the alleged loss
amounts charged by the Government prosecutors does not even
exist.

<u>WHAT THE TESTIMONY OF THE MEDICAID, MEDICARE</u>
<u>BLUE CROSS AND BLUE SHIELD</u>
<u>BENEFICIARIES WOULD SHOW</u>

If trial counsel would have investigated and interviewed
Medicaid, Medicare and Blue Cross and Blue Shield beneficiaries
who had their prescriptions filled at a Patel Pharmacy counsel
would have discovered that all beneficiaries had their medications
dispensed to them after providing their Insurance Plan Card,
Photo Identification and signature. The Medicaid, Medicare and
Blue Cross and Blue Shield beneficiaries testimony would have
been the stongest and most relaible evidence that the "bill
but not dispensed" scheme alleged against Patel did not happen.
Only the beneficiaries know whether or not they received their
medications after signing for them at a Patel Pharmacy.
SEE MEMORANDUM OF FACT AND LAW IN SUPPORT OF GROUND SIX
ATTACHED HERETO THIS 2255 MOTION.

24.

GROUND SEVEN:        Trial counsel was ineffective for not requesting
mistrial when three weeks into trial the Government revealed it
had withheld exculpatory evidence in the form of McKesson
Pharmaceutical Corporation Administrative Investigation records.


FACTS THAT SUPPORT GROUND SEVEN:

·      Prior to trial defense counsel Harold Gurewitz on behalf of
all the defendsnts made a request to Government Attorneys John
K. Neal and Wayne F. Pratt that the defense be provided with the
McKesson records including the Administrative Investigation
Reports.

       Three weeks into trial Mr. Gurewitz addressed the trial court
on the issue of the Government's failure to provide specifically
requested McKesson maertials. Mr. Gurewitz stated the following:

       Mr. GUREWITZ:        I have made a request -- I did this at
       the very beginning of trial -- that the Government provide
       me with information relating to the government's administrative
       investigation of the drug company -- pharmaceutical company,
       McKesson, and the representative Cindy. (Trial Transcript,
       Volume 14, page 171, lines 21-25). It is clear from the
       records that defense counsel requested prior to trial that
       the govenment provide the defense with the McKesson records
       and Administrative Investigation Reports.
It was three (3) weeks into trial when government attorneys
at the direction of the trial court provided defense counsel with
"eyes only" access to the Administrative Investigation Report of
McKesson Corporation. The trial court told the government

                                25.

attorney Mr. Pratt the following:

> THE COURT:      This is the second or third week of trial
> it's a little late, is it not?
>
> I mean, especially to represent that there's nothing
> in there, without haveing seen it -- and I guess I can't
> turn the clock back, but --. (Volume 14, page 175, lines
> 10-14).

Regardless of what the Administrative Investigation Report
of McKesson Corporation contained or revealed, its being produced
to the defense attorney's three weeks into the trial was to late
for defense attorneys to throughly investigate the contents of
the reports and records for its exculpatory evidence benefit to
the defendants. By withholding the knowledge of the Government's
investigation, civil law suit and settlement with McKesson for
fraudulant price inflation, and the McKesson records the Government
violated the requirements of **Brady** and deprived Patel of his Sixth
Amendment right to a fair trial.

Three weeks into the trial when the Government attorney's
revealed they had withheld the Administrative Investigation
Report and McKesson records from the defense Patel's trial
counsel Mr. Niskar was ineffective for not requesting a mistrial
based on the Government's Brady violation. Patel was denied a
fair trial due to ineffective assistance of trial counsel.
Patel requests his conviction be vacated and he be granted a new
trial.

SEE MEMORANDUM OF FACT AND LAW IN SUPPORT OF GROUND SEVEN
ATTACHED HERETO THIS 2255 MOTION.

**GROUND EIGHT:**        Trial counsel was ineffective during jury selection phase of the trial (voir dire) for failing to ask prospective jurors if they "were participants in the Government Health Care Programs, Medicaid, Medicare, or Blue Cross and Blue Shield Insurance providers.

**FACTS THAT SUPPORT GROUND EIGHT:**

     During trial counsel's questioning of the prospective jurors Patel's counsel Mr. Niskar did not ask any of the jurors if they were participants in any of the Government's Health Care Programs, Medicaid, Medicare, or Blue Cross and Blue Shield Insurance of Michigan. Mr. Niskar failed to reveal any bias or prejudice any of the jurors might have harbored due to their being participants in the Health Care Programs Patel and other defendants were charged with defrauding. Due to ineffective assistance of counsel it was never determined if any of the jurors consealed bias or prejudice against Patel  and the other defendants.

SEE MEMORANDUM OF FACT AND LAW IN SUPPORT OF GROUND EIGHT
ATTACHED HERETO THIS 2255 MOTION.

<u>GROUND NINE:</u>     Trial counsel was ineffective for failing to object to Government's expert witnesses testifying lay witnesses and for Government not providing required notice and summary of expert witness testimony.

<u>FACTS THAT SUPPORT GROUND NINE:</u>

At trial the government called employees of Medicaid, Medicare and Blue Cross and Blue Shield as government witnesses. The government called Todd Stankewicz an employee of Medicaid, and Medicare Service Center (CMS). Mr. Stankewicz job title at CMS is Regional Pharmacist. His job discripton is that of an advisor consultant for people at the CMS office based on his "sppecalized traning. (Trial Transcript, Vol 16, pages 158-159). Mr. Stankewicz gave testimony based on his specalized knowledge" of the complex operations of Medicaid and Medicare. (Trial Transcript, Vol. 16, pages 158-163). Ultimately Mr. Stankewicz testified as an "expert witness". Mr Stankewicz was allowed to give testimony without the Court making a finding that he was qualified as an expert witness. Prior to trial the government prosecutors did not provide Patel's trial counsel Mr. Niskar with a written summary of Mr. Stankewicz's testimony. Mr. Stankewicz's testimony was based on training and knowledge well beyond the knowledge of an average lay person and qualifies as expert testimony.

The government called Michele Warstler as a witness. Ms. Warstler was an employee of the Michigan Department of Community Health Services. Ms. Warstler's job title is Director of Corporate and Financial Investigations Department. (Trial Transcript, Vol.

28.

17, page 11, lines 18 thru 24, page 18, lines 1-2). Ms. Warstler gave testimony based on her specalized training and knowledge concerning the complex operations of the Michigan Department of Community Health Services and Blue Cross and Blue Shield. Ms. Warstler testified that she had worked for Blue Cross and Blue Shield for 21 years. (Trial Transcript, page 18, lines 6-7). Ms Warstler's testimony is based on training and knowledge well beyond the knowledge of an average lay person and qualifies as expert witness testimony.

The government also called Dr. Charles Drake, Pharmacist with a Doctorate in Pharmacy. Dr. Drake gave testimony concerning his expert training and experience in the field of Pharmacy Operations. Dr. Drake's specalized training in the field of Pharmacy qualified him as an expert witness. (Trial Transcript Vol. 20, pages 14-15). Dr. Drake's testimony was based on expert knowledge well beyond the knowledge of the average lay person. The trial judge found that Dr. Drake's testimony qualified as expert testimony, but did not declare to the jury that Dr. Drake was testifying as an expert witness. Prior to trial the government prosecutors did not give defense counsel notice that Dr. Drake would be testifying as an expert witness and did not provide the defense with a written summary of Dr. Drake's testimony.

The trial court abused its discretion in permitting government witnesses give expert testimony as lay persons after finding that the witnesses testimony was that of an expert witness, and the

29.

government failed to provide defense with adequate notice under Fereral Rule of CRiminal Procedure 16(a)(1)(G), that it was presenting expert witness testimony at trial and did not provide the defense with a written summary of its expert witnesses testimony. The government prosecutors offered no information about the nature of the expected testimony of its expert witnesses and no information concerning the contact information or the witnesses qualifications.

Trial counsel did not raise an objection nor request a mistrial when the trial court allowed the government to present expert testimony under the guise of lay testimony. Counsel's ineffectiveness deprived Patel of a fair trial. Patel requests his conviction be vacated and he be given a new trial.

SEE MEMORANDUM OF FACT AND LAW IN SUPPORT OF GROUND NINE ATTACHED TO THIS 2255 MOTION.

<u>GROUND TEN</u>:      Sentencing counsel Robert L. Sirianni was
ineffective at sentencing proceedings for failing to investigate
the Government's evidence of "loss amount" and to use that same
evidence to show there was no loss and no fraud that could be
attributed to Babubhai Patel.


<u>FACTS THAT SUPPORT GROUND TEN</u>:

Prior to sentencing Government provided Patel's counsel
Robert L. Sirianni with documents that were prepared by Lafell
Peoples, FBI Forensic Accountant and documents provided from
the Drug Enforcemnet Agency (DEA). The provided documents showed
the Government's calculations of total amounts paid to the
Patel Pharmacies by Medicare, Medicaid and Blue Cross and Blue
Shield Insurance Company. The accounting documents also showed
the amounts paid by Patel Pharmacies to the pharmaceuitcal
supplier McKesson Corporation. The documents showed that Medicare,
Medicaid and Blue Cross and Blue Shield paid Patel Pharmacies
a Total amount of $64,937,164.36.(See Exhibit B, Government Charts
showing combined total amount of $64,937,164.36). The documents
provided by the Government also showed the Patel Pharmacies
paid McKesson Corporation a total amount of $46,642,872.88.
(See Exhibit A, Affidavit and Charts prepared by Patsy Aiken,
Certified Public Accountant (CPA) based on documents provided by
Government Agents showing a total of $46,642,872.88.

The Government alleged the amount of intended amount loss
on Patel Pharmacies fraud amounted to $18,955,869.00. (See

31.

Patel's Presentence Report (PSR), page 14, ¶ 11 ). The Government
calculated a 25 percent of the $64,937,164.36  paid to Patel
Pharmacies by Medicare, Medicaid Blue Cross and Blue Shield
as actual intended loss amount of $18,955,869.00. (See sentencing
transcript, page 17, lines 1-5). What the Government did not
figure into its calculations and financial charts is the
Patel Pharmacies 25 percent margin of profit which would amount
to 18,937,164.36 of the $64, 937,164.36 paid to Patel Pharmacies
by Medicare, Medicaid and Blue Cross and Blue Shield.

Simple mathmatics shows ther cannot be both 25 percent
loss and 25 percent Patel Pharmacies profit and payment of
$46,642,872.88 to McKesson by Patel Pharmacies and stay within
the $64,937,164.36, the Government alleges the total amount of
the Health Care Fraud Conspiracy charged in the indictment.
The figures show there was no fraud loss and no fraud that can
be attributed to Babubhai Patel. Patel's counsel Mr. Sirianni
had in his possession the very evidence supplied by the Government
that wil show (as demonstrated herein) that there could be no
fraud loss and no fraud. Mr. Sirianni failed to investigate the
Government's accounting charts and information and use that
information to show Patel is actually innocent of health care
fraud conspiracy.

SEE MEMORANDUM OF FACT AND LAW IN SUPPORT OF GROUND TEN
ATTACHED TO THIS 2255 MOTION.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      v.

                        Case No. 11-cr-20468

                        Hon. Arthur J. Tarnow

BABUBHAI PATEL

      Defendant.

_____/

## MEMORANDUM OF LAW AND FACT IN SUPPORT
## MOTION UNDER 28 U.S.C. §2255

The Defendant Babubhai Patel pro se respectfully submits this memorandum of law and facts in support of his foregoing motion under 28 U.S.C. §2255.

### PRELIMINARY STATEMENT

The thrust of Patel's claims are as follows (1) trial counsel was ineffective for failing to challenge Count One as being duplicious before trial was had, (2) trial counsel was ineffective for failing to develope only available defenes, (3) trial counsel ineffective for failing to file Rule 14 motion for severance, (4) trial counsel was ineffective for failing to object when trial judge interfered with jury's fact finding function by not allowing government agent to answer jury's questions (5) trial counsel ineffective for failing to request mistrial when trial judge intefered with jury's fact finding fuction that denied Patel a fair trial, (6) trial counsel was ineffective for failing to investigate, interview and call witnesses for the defense, (7) trial counsel was ineffective for

1.

not requesting mistrial when three weeks into trial the
Government revealed it had withheld exculpatory evidence in
the form of McKesson Pharmaceutical Corporation Administrative
Investigation records, (8) trial counsel was ineffective during
jury seliction phase of trail (voir dire) for failing to ask
prospective jurors if they were participants in the Government's
Medicaid, Medicare Program or Blue Cross and Blue Shield Health
Insurance of Michigan, (9) trial counsel was ineffective for
failing to object to Government's expert witnesses testifying as
lay witnesses and for Government not providing required notice
and summary of expert witness testimony, (10) sentencing counsel
Robert L. Sirianni was ineffective on sentencing proceedings for
failing to file an "effective" motion for issuance of subpeona
to obtain McKesson Pharmaceutical Corporation records and
ineffective for failing to  investigate Medicaid, Medicare and
Blue Cross and Blue Shield billing procedures to show that
McKesson Corporation billed Medicaid, Medicare and Blue Cross
and Blue Shield and that Patel Pharmacies did not bill Medicaid,
Medicare or Blue Cross and Blue Shield,

## GROUND ONE

Trial counsel was ineffective for failing to challenge
Count One prior to trial because of duplicious charging.

## FACTS AND LAW THAT SUPPORT GROUND ONE

It is axomatic that a single count that charges more than one
offense is defective. "An indictment is duplicious if it sets
forth seperate and distinct crimes in one count" United States
v. Davis, 306 F.3d 398, 415 (6th Cir. 2002); United States v. Duncan,
850 F.2d 1104, 1108, n.4 (6th Cir. 1988).

The Sixth Circuit has recognized the inherant problems,
constitutional in their basis, in charging a defendant with more
than one offense in a single count. First the duplicious indictments
implicate the Sixth Amendment guarantee of jury unanimity. See
United States v. Campbell, 279 F.3d 392, 398 (6th Cir. 2002);
also see Duncan, 850 F.2d 1108, n.4 ("Overall vice of duplicity
is that jury cannot in general verdict render its finding on
each offense, making it difficult to determine whether the
conviction rests on only one of the offenses or both"). The
danger is that collapsing seperate offenses into a single count,
duplicious indictments prevent the jury from convicting on one
offense and acquitting on another. Campbell, 279 F.3d at 398.
Second a duplicious Count may result in improper notice of the
charge as required by the Sixth Amendment pursuant to Fed. R.
Crim. P. 7. cf. United States v. Landham, 251 F.3d 1072, 1079
n.3 (6th Cir. 2001). The notice  requirement is intended to
provide the defendant a basis on which to intelligently consider
and prepare his defense. United States v. Berios-Centeno, 250

3.

F.3d 294, 297 (5th Cir. 2001). Third, a duplicious count exposes
the defendant to double jeoperdy. See Duncan, 850 F.2d at 1108
n. 4; also see United States v. Alsobrook, 620 F.2d 139, 142
(6th Cir. 1980). (recognizing double jeopardy as one danger of
duplicious claims). Fourth, an indictment joining seperate multiple
offenses in a single count increases the potential for "prejudice
in shaping of evidentiary rulings, in sentencing, in limiting review
on appeal and of course the danger that a conviction will result
from a les than unanimous verdict as to each seperate offense.
See United States v Washington, 127 F.3d 510, 513 (6th Cir. 1997)
("duplicity can potentially prejudice the defendant in sentencing,
obtaining appellate review, and protecting him against double
jeopardy").

Applying the Blockburger test in the instant case shows
that "submitting false and fraudulant claims" and "offering and
paying kickbacks and bribes" are two seperate offenses that in
this case charge two seperate conspiracies. The Blockburger tests
states that if each offense requires proof of an additional
fact that another allegation does not, the offenses are seperate.
See United States v. Blockburger, 284 U.S. 299 (1932); also see
Davis 306 F.3d at 416; United States v. Adesida, 129 F.3d 846,
849 (6th Cir. 1997)(count duplicious because alleged offenses
"require different proof and are seperate offenses")

In United States v. Njoku, 2013 U.S. App. LEXIS 23994 (5th
CIr. 12/2/2013) the Government argued and the Court agreed that
Health Care Fraud Involved Seperate Conspiracies. The Court held
that under 18 U.S.C. §1349 a scheme to pay kickbacks for referals

4.

constituted one conspiracy and that falsifying patients files
to make it appear beneficiaries receives services that were not
provided amounted to a seperate conspiracy. The Court held that
the seperateness of the two offenses was shown by the "bifurcation"
of some of the "responsibilities" in the two schemes. In the
instant case Count One is duplicious because it charges a
conspiracy to submit false and fraudulant claims, and a second
conspiracy to offer and pay kickbacks and bribes. The Njoku
case supports  Patel's Ground One Claim that Count One is
duplicious and must be dismissed from the indictment.

   In United States v. Patel, 2013 U.S. Dist. Lexis 5715
(6th Cir. 2013), Judge Tarnow citing from the Government's
Sentencing Memorandum 3. stated the following

   "A seperate scheme also involved physicians
   affiliated with Defendant writing prescriptions
   for controlled substances for patients who did
   not require drugs, which were then filled at
   Defendant's pharmacies. Government Sentencing
   Mem. 3. These controlled substances would then
   be used as kickbacks to patients and patient
   recruiters".

   It is readly apparent that both the Court and Government
recognized that there was a seperate scheme (conspiracy) based
on "offering kickbacks and bribes" as evidenced by Judge Tarnow's
Opinion, Memorandum and Order in Patel, 2013 Lexis 5715.

5.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Federal Rules of Criminal Procedure Rule 12(b)(3) clarifies Motions That Must Be Raised Before Trial. Subsection (B) provides that "a motion alleging a defect in the indictment or information, must be brought before trial. Here Patel's trial counsel was ineffective for failing to file a motion pursuant to Rule 12(b)(3) challenging Count One as duplicious charging.

To establish that his trial counsel was ineffective Patel must establish that (1) "counsel's performance was defecient" and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial" a trial whose results is reliable". Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). Following the Strickland standard, the Sixth Circuit has said that the Petitioner must establish that "(1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome would have been different. Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003).

In considering the first prong of Strickland, the appropriate measure of attorney performance is "reasonableness under the prevailing norms" Strickland, 466 U.S. at 688. Here it was unreasonable for patel's trial counsel not to challenge the duplicious charging in Count One by filing a motion pursuant to Rule 12(b)(3)(B) to dismiss Count One as duplicious. Count One is duplicious on its face and a motion to dismiss count one would have merit. Trial counsel was ineffective because they did not investigate the charges in Count One to uncover the duplicious charging of two seperate and distinct conspiracies charged in Count One. Under the prevailing norms a reasonable attorney would have investigated the charges in Count One and

6.

would have discovered the duplicious charging and have filed a
motion pursuant to Rule 12 Fed. R. Crim P., to dismiss Count One
based on duplicious charging which the Trial court would have
granted. Counsel's failure to investigate Count One and file
a motion to dismiss based on duplicity establishes "cause"
under the Strickland standard.

Addressing the second prong of Strickland the test requires
the petitioner to show counsel's deficient performance prejudiced
the defense. Petitioner must show "there is a reasonable
probability that, but for counsel's unprofessional errors, the
results of the proceedings would have been different". Id. at 694.
In the instant case prejudice is established by the jury being
unable to "convict on one offense and acquitting on the other".
See United States v. Campbell, 279 F.3d 392, 398 (6th Cir. 2002).
Prejudice is further established by "improper notice" of the
charge as required by the Sixth Amendment. United States v.
Landham, 251 F.3d 1072, 1079, n.3 (6th Cir. 2001). Trial counsel
due to improper notice was not prepared to defend Patel against
both conspiracies charged in Count One. Submission of false and
fraudulant claims to medicare and medicaid require different
proof and evidence than soliciting, offering, and paying kickbacks
and bribes. Due to improper notice trial counsel did not know
that Patel was charged with two seperate conspiracies that had
to be defended against. Further prejudice is established due to
the facts that it cannot be determined which conspiracy the jury
convicted Patel of, or if the juries verdict on Count One was

7.

unanimous, some jurors finding guilt on false and fraudulant claims and other jurors finding guilt on paying bribes and kickbacks. See United States v. Duncan, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988). Here Patel's claim that his trial counsel was ineffective for failing to challenge the duplicious charging in Count One establishes both "cause" and "prejudice" under the Strickland standard for establishing ineffective assistance of counsel. There is more than a reasonable probability that had counsel challenged the duplicious charging in Count One prior to trial there would have been a different outcome to the case.

Although Rule 12(b)(3) Fed. R. Crim. P., requires a motion alledging a defect in the indictment must be brought before trial. Rule 12(b)(e) provides a safety valve that the district court may use. See United States v. Walden, 625 F.3d 961 (6th Cir. 2010). Rule 12(e) provides that a party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline set by the court under Rule 12(c) or by any extension the court provides. "For good cause the court may grant relief from the waiver".  The Sixth Cirtuit holds that ineffective assistance of counsel is "good cause" to grant relief from waiver if the petitioner can establish both "cause" and "prejudice". See United States v. Rantanen, 467 Fed. Appx. 414 (6th Cir. 2012). where the Court stated "Though Rantanen may pursue this claim through a collateral appeal by arguing his attorney was ineffective for failing to raise a timely motion to suppress, Walden, 625 F.3d at 967 (citing Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L. Ed. 2d 714 (2003); 28 U.S.C. §2255).

Also see United States v. Hall, 565 F.2d 917 (5&11th Cir. 1997).
(Delayed consideration of a motion to suppress is authorized by
Fed. R. Crim. P. 12(f) for cause shown. The district court's
desire to avoid penalizing a criminal defendant for the inadertance
of his attorney constitutes "cause" under Rule 12(f) and is within
the courts discretion". U.S.C.A.  Here Patel's establishing both
cause and prejudice under the Strickland standard for ineffective
assistance of counsel provides "good cause" under Rule 12(e)
for the Court to grant relief from "waiver" for counsel's
failure to challenge the duplicious charging in Count One.

Patel requests the Court dismiss Count One and resentence
him accordingly.

## GROUND TWO

Trial counsel was ineffective for failing to
investigate available exculpatory evidence, interview and call
witnesses, develope and present available defense and challenge
the government's case through the advisarial process.

## FACTS AND LAW THAT SUPPORT GROUND TWO

There is evidence in the case that Patel explained to his
trial counsel well in advance of trial the importance of the
McKesson Pharmaceutical Corporation's records to the criminal
charges alleged against him and requested his counsel to subpoena
McKesson records and interview McKesson employees. Patel's
counsel failed to conduct any investigation into McKesson's

connection to Patel's case. Counsel did not subpeona McKesson records as Patel instructed them to do nor did counsel interview any McKesson employees. "Under Strickland v. Washington, 466 U.S. 668 (1984), trial counsel has a duty to investigate his case. In other words counsel has a duty to make reasonable investigations or to make resonable decisions that makes particular investigations unnecessary. Stewart v. Wolfenbarger, 468 F.3d 338 (6th Cir. 2006). In the instant case patel's counsel could not have made a reasonable decision that it was unnecessary to subpeona McKesson records or interview McKesson employees because he did not know what the McKesson records contained nor did he know what information the McKesson employees could provide to support Patel's defense. Counsel's failure to investigate clearly constitutes objectively deficient performance. Counsel had no reason to believe that the McKesson Records and information provided by McKesson employees would not be valuable to Patel's defense. "Where counsel fails to investigate and interview promising witnesses, and therefore has no reason to believe they would not be valuable in securing defendant's release, counsel's inaction constitutes negligence, not trial strategy". Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir. 1992). Counsel did not make any attempt to investigate the lead Patel gave him concerning McKesson Corporation's connection to the criminal charges in the indictment, nor did counsel make a resoned professional judgment that for some reason investigation was not necessary. "A failure to investigate, especially as to key evidence must be supported by a reasoned determination that investigation was not warranted". O'Hara v. Wiggins, 24 F.3d 823

10.

(6th Cir. 1994).

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial". Nelson v. Hargett, 989 F.2d 847 (5th Cir. 1993). Had Patel's trial counsel conducted adequate investigation they would have discovered that the Government's allegations of "billing but not dispensing", as charged in the Health Care Fraud Conspiracy in Count One was an impossibility due to all the "safeguards" implemented against fraudulant billing by McKesson Corporation, Medicare, Medicaid and Blue Cross and Blue Shield Insurance Co.

### WHAT AN INVESTIGATION OF MCKESSON RECORDS WOULD HAVE SHOWN

The flaw in the government's case against Patel is that the government's theory of "billing and not dispensing" is nothing more than a theory and an impossibility. The McKesson records would have show that before a beneficiary of Medicade, Medicaid or Blue Cross and Blue Shield Insurance can obtain any medications from a pharmacy the benificiary must first provide the following (a) picture identification, (b) a Medicaid, Medicare, or Blue Cross and Blue Shield, Insurance card and plan number, and (c) provide a signature confirming patient has received medications. Once a beneficiary provides picture Id, provider plan number and signature that information is entered into the pharmacy computor and electronically sent to McKesson Corporation.

McKesson records would also have shown that it was Mckesson that billed Medicaid, Medicare and Blue Cross and Blue Shield and

11.

not the Patel Pharmacies. Patel Pharmacies did not bill Medicaid, Medicare or Blue Cross and Blue Shield as the Government presented to the jury. Based on the information provided by Patel Pharmacies McKesson's billing department would prepare a bill and submit that bill to Medicaid, Medicare and Blue Cross and Blue Shield on behalf of Patel Pharmacies. Because Patel's trial counsel failed to obtain the McKesson Records and interview McKesson employees it was never made known to the jury that McKesson Corporation did the billing to Medicare Medicaid and Blue Cross and Blue Shield and not Patel Pharmacies.

The McKesson records will also show that Patel Pharmacies would not receive any money for returned medications. McKesson would only credit return medications for 75% of the original price paid by Patel Pharmacies and that credit could only be used to purchase additional medications from McKesson. Patel Pharmacies would receive no money for returned medications. On return medications Patel Pharmacies would lose 25% of money paid for the returned medications and the 75% credit could only be used to purchase additional medications from McKesson. At trial the government prosecutors told the jury that when Patel Pharmacies would return medications to McKesson Patel would receive a refund for those medications and that was how Patel was committing fraud. Because trial counsel failed to obtain the McKesson Records and interview McKesson employees the jury never learned that Patel was not receiving any money for any returned medications as the government mislead the jury to believe. The Government's theory

12.

of the alleged "scheme" of "billing but not dispensing" could
only generate illegal revenue for Patel Pharmacies if Patel could
return the non-dispensed medications to McKesson and receive cash
money. But that is an impossibility because McKesson's return
medication system is a "safeguard" to prevent such a scheme.
McKesson does not provide a cash buyback system for return medications
but only provides a 75% credit for the purchase of additional
medications. The McKesson Corporation records would have shown
the Government's case against Patel was based on inference stacked
upon inference not supported by any evidence. Here trial counsel
was ineffective for not obtaining the McKesson records and
interviewing McKesson employees prior to trial as Patel had told
him to do. In the case at bar there is a reasonable probability
that if Patel's trial counsel would have conducted an adequate
pretrial investigation, the results of the proceedings would have
been different.

## MCKESSON EMPLOYEES

If Patel's trial counsel would have interviewed McKesson
employees counsel would have been provided the following
information based on Mckesson employees knowledge of Mckesson's
operating proceedures. (a) that McKesson provides a billing
service for Pharmacies who purchase medications from McKesson
and that it was McKesson who provided the billing to Medicaid,
Medicare and Blue Cross and Blue Shield and not Patel Pharmacies.
(b) that McKesson return medication system was designed as a
safeguard to prevent fraudulant schemes. That McKesson does not
provide cash money for returned medications and only provides

a 75% credit for the purchase of additional medications from
McKesson Corporation (c) that McKesson Corporation had never
provided Patel Pharmacies with cash money for any returned
medications (d) that by returning medications for return credit
Patel Pharmacies would lose 25% of the original value of the
returned medications. (e) that before a Medicaid, Medicare or
Blue Cross and Blue Shield beneficiary can have any prescribed
medications dispensed to them through a Patel Pharmacy, they must
first produce a Medicaid, Medicare or Plan Identification Number
or an Insurance Claim Number and before any medications can be
dispensed to them their signature is required (f) that Patel
Pharmacies must provide McKesson Corporation with a copy of the
beneficiaries photo identification, plan identification number
or insurance claim number and signature for each medication
dispensed to the benificiarie, before McKesson will bill Medicaid,
Medicare or Insurance Health Provider Companies.

Patel's trial counsel Mr. Niskar knew the importance of the
McKesson records and employees to Patel's defense. In his closing
arguments Mr. Niskar told the jury the best evidence would be the
McKesson records. (See Vol. 27, page 92, lines 14-23). Knowing
that the McKesson records was the best evidence Mr. Niskar was
ineffective for not obtaining the McKesson records and interviewing
McKesson employees. Even Patel's Jurors knew the importance of
the McKesson records and went so far as to ask the question "why
didn't the government obtain the pharmaceutical company records"
(See Volume 21, page 72, lines 15-17). Even the trial judge (Judge
Tarnow) asked the government prosecutors, where are the McKesson

records. (See Volume 14, pages 174-176). Patel's only available defense was based on the information contained in the McKesson records and the testimony of McKesson employees. If Patel's jury would have had access to the information contained in the McKesson records and would have heard the testimony of McKesson employees there would have been a different outcome to Patel trial. The only reason Patel's jury convicted him is because his trial counsel failed to conduct adequate pre-trial investigation, interview witnesses and develope an available defense. Due to ineffective assistance of counsel Patel was denied a fair trial in violation of his constitutional Sixth Amendment right to a fair trial.

An additional flaw in the Government's case against Patel is that out of the thousands of Patel Pharmacy customers/beneficiaries that the Government alleges did not have their signed for medications dispensed to them the Government did not produce even one of them at trial to testify that they did not have their medications dispensed to them by a Patel Pharmacy after signing for their medications. Not even one Patel Pharmacy customer/benificiarie ever complained to Medicaid, Medicare, Blue Cross and Blue Shield, FBI, local law enforcement that they had not been given their medications at a Patel Pharmacy after signing for their medications.

15.

## GROUND THREE

Trial counsel was ineffective for failing to file a pre-trial motion for severance under Rule 14 Fed. R. Crim. P., where counsel knew other defendant's counsel would be pointing the finger of guilt at Patel in front of the jury, and ineffective for failing to move for mistrial when other counsel inculpitated Patel in front of the jury and failure to ask for severence at that time.

## FACTS AND LAW THAT SUPPORT GROUND THREE

Patel's codefendant's counsel Mr. Burdick's soliciting incriminating answers to his questions concerning alleged criminal acts constitutes an "antagonistic defense" on behalf of his client Komal Acharya. Patel was not charged in the indictment with the alleged acts Mr. Burdick's incriminating questions accused Patel of. Based on Mr. Burdick's accusations and the government witnesses affirmative answers, there is an increased risk that the jury found Patel guilty based on criminal acts not charged in the indictment or proven beyond a reasonable doubt. The evidence created by Mr. Burdick's antagonistic defense against Patel was very negative bad character evidence that would not have been admissable against Patel in a seperate trial. If Patel's trial counsel Mr. Niskar would have made known to the trial court the extent of Mr. Burdick's antagonistic defense in a Motion for severance under Rule 14 Fed. R. Crim. P. there is a reasonable probability the Court would have granted the motion for severance.

A co-defendant is not entitled to severance merely because severance might increase the possibility of acquittal. United States v. Parks, 228 Fed. Appx 527 (6th Cir. 2008)citing United

16.

States v. Zafiro, 506 U.S. 534, 540, 122 L.Ed 2d 317, 113 S.Ct.
933 (1993). The Sixth Circuit holds that "severance is required
only if there is a serious risk that a joint trial would
compromise a specific trial right of one of the defendants, or
prevent the jury from making a reliable judgment about guilt or
innocence". <u>United States v. Walls</u>, 293 F.3d 959, 966 (6th Cir. 2002)
(quoting Zafiro, 506 at 539) and reaffirming that decision in
<u>United States v. Parks</u>, 228 Fed. Appx. 527 (6th Cir. 2008). In the
instant case Patel's jury was prevented from making a reliable
judgment about guilt or innocence due to Mr. Burdick's soliciting
evidence from government witnesses that Patel committed the criminal
act of "forgery" "counterfeiting dummy tax returns" "fraudulantly
putting Pharmacies in other peoples names". Here it cannot be
determined if the jury found Patel guilty based on government's evidence
of the charges in the indictment or based on the evidence of
criminal acts brought to light and clarified by Mr. Burdick's
cross-examination of government witnesses Chetan Gujarathi and
Agent Tyler Parkinson.

Trial counsel's failure to file motion for severance before
trial and during trial and failure to request mistrial caused
Patel to suffer severe and unfair prejudice from the evidence that
Patel committed criminal acts not charged in the indictment.
Because of the confusion created by Mr. Burdick's antagonistic
defense it cannot be determined that the jurors guilty verdict
was a unanamious verdict, some jurors finding Patel guilty based
on charges in the indictment and other jurors finding Patel guilty
based on the uncharged criminal acts evidence and cahrges in the

17.

indictment. If counsel would have requested a mistrial it would have been necessary for the trial court to grant a mistrial under the circumstances presented. The United States Supreme Court has established a sliding scale of scrutiny for determining wheteher manifest necessity exists. The strict scrutiny applies when a mistrial is based on prosecutorial or judicial conduct. At the other end, great deferance or special respect is due when the mistrial is based on a deadlock jury. Mistrials premised on the prejudicial effect of improper evidence or argument are akin to the latter and are also entitled to great deference. Colvin v. Sheets, 598 F.3d 242 (6th Cir. 2010). The facts of this case and issue satisfies the "manifest necessity standard" for granting of a mistrial if counsel would have requested a mistrial. The evidence of other criminal acts solicited from government witnesses by Mr. Burdick would not have been admissable against Patel in a seperate trial.

An essential ingredient of the U.S. Const. amend. VI right to counsel is that counsel provide constitutionally effective assi assistance. The benchmark of effectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just results. Washington v. Hofbauer, 228 F.3d 689 (6th Cir. 2000). Because of the antoganistic defense presented by Mr. Burdick on behalf of his client Komal Acharya Patel's trial cannot be relied upon as having produced a just verdict and denied Patel a fair trial.

## GROUND FOUR

Trial counsel was ineffective for failing to object when the trial judge interfered with the jury's fact finding function by not allowing government's witness to answer jury's questions.

## FACTS AND LAW THAT SUPPORT GROUND FOUR

Government witness Agent Lafell Peoples had given some lenghtly testimony some of which discussed the records from McKesson Pharmaceutcal Corporation. Defense counsel Joseph Niskar asked Agent Peoples "Have you done -- have you subpoenaed records from McKesson"/ to which Agent Peoples responded "We have not" (See Trial Transcript, Volume 21, page 24, lines 12-13). When Agent responded "We have not" he was speaking on behalf of the government and the government's attorneys. Agent Peoples was the governments main investigator on the case and had knowledge whether or not the government had subpeoneaed drug company records. Agent Peoples also had knowledge as to why the government had not requested "records from the drug companies" and could have answered the jury's questions, but was not allowed to answer the questions because the trial court refused to submit the jury's questions to Agent Peoples. When the trial judge refused to submit the jury's questions to Agent Peoples  trial counsel Mr. Niskar was ineffective for failing to raise an objection and ineffective for failing to request a mistrial.

The government prosecutor Mr. Pratt mislead the Court by telling the court the questions were inappropriate for Agent Peoples and had to be addressed to them. The trial court relied on Mr. Pratt's reply and in return mislead the jurors and

interfered with the jury's fact finding function required by the Sixth Amendment of the United States Constitution and denied Patel a fair trial.

## JURY'S FACT FINDING FUNCTION

Because the trial court refused to presnt the jury's questions to Agent Peoples concerning why the government didn't subpeona records from the drug compaies the jury was prevented from knowing the government's reasons for not subpeonaing the McKesson records. When Agent Peoples testified "We have not", the next logical question would have been "why not". And that's the precise question the jurors wanted Agent Peoples to answer because it was never asked by the defense attorneys. The jurors knew that the drug companies records were material and relevant to the criminal charges against Patel in this case and wanted to know why the government had not obtained those records. It was an inherent duty of the jury's fact finding function to factually determine why the government had not obtained and provided the drug companies records when those records were both material and relevant to case they were sworn to decide based on the facts and evidence presented. "It is the jury, not the court, which is the fact finding body". Cooper v. Chastain, 810 F.@d 200 (6th Cir. 1986).

The trial court abused its discretion in finding that the question concerning why the government had not requested the drug companies records was a question only the government attorney's could answer. "An abuse of discretion occurs when the district

20.

court relies on clearly erroneous finding of facts, improperly
applies the law, or uses an erroneous legal standard" IN RE BROWN,
342 F.3d 620 (6th Cir. 2003)(citing Southward v. S. Cent. Ready
Mix Supply Corp., 7 F. 3d 487, 492 (6th Cir. 1993). Here the
trial court's findings that the jurors question concerning "why
the government didn't request tax documents or records from drug
companies" required answers from government attorney is an
erroneous findind of law and constitues an abuse of discretion
that clearly interfered with the jury's fact-finding function
and contributed to the jury's guilty verdict. Here the jury's
verdict was swayed by the trial court's erroneously preventing
Agent Peoples from answering the jurors question "why the government
didn't request the records from drug companies". If Agent Peoples
would have been allowed to answer the jurors questions concerning
"why the government didn't request the records from drug companies"
defense counsel would have an oppertunity to cross-examine Agent
Peoples about the McKesson records that the government erroneously
alleged it did not have. Any response from Agent Peoples would have
opened the door to the mcKesson records and would have placed the
government's case against Patel in a different light. It has
already been established that one of the defense attorney's
(Mr. Gurewitz) had requested the drug company/McKesson records
prior to trial. It has also been show that the McKesson records
are Brady material that was withheld from the defense untill
three weeks into the trial. The question is why could only the
government attorney/prosecutors answer the jurors question when
it was Agent Peoples who had been in charge of obtaining records

for the government's case and making charts based on those
records? Agent Peoples would have more knowledge about why the
government didn't request records from the drug companies than
the government attorneys based on his participation in the
investigation of the case. Agent Peoples testimony was all about
the records the government had subpoened and obtained to support
the case against Patel and the jurors found that to be factual
and the jury's question as to "why the government did not request
records from drug companies" was appropriately asked and showed
the jury was following the facts and evidence being testified
to by Agent Peoples and the jury wanted to hear from Agent Peoples
"why the government did not request records from drug compamies".
Agent Peoples should have been allowed to answer the jury's question
which was one of the most important questions asked of any
witness in the case and still remains unanswered. Here the trial
judge interfered with the juries fact-finding function that had
a serious prejudicial effect upon Patel's defense that contributed
to the jury's verdict of guilty and denied Patel a fair trial in
violation of his Constitutional Sixth Amendment right to a fair
trial.

<u>INEFFECTIVE ASSISTANCE</u>

Due to the importance of the drug companies (McKesson)
records in connection to the charges against Patel and the jury
and the trial judge wanting to know were are the drug company-
McKesson records, it was professionally unreasonable for Patel's
trial counsel not to raise an objection to the trial judge's
refusal to allow Agent Peoples to answer the juries question of

"why the government did not request records from the drug companies". Counsel was also ineffective for not requesting a mistrial when the trial judge would not allow Agent Peoples to answer the juries questions.

Here Mr. Niskar's unprofessional conduct in failing to object to the trial judge's interfereence with the jury's fact-finding function and failing to request a mistrial had a serious effect on the jury's verdict. As shown herein there is a reasonable probability that but for Mr. Niskar's unproffesional errors the results of the proceedings would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 691 (1984). Under the circumstances of this case trial counsel's failure to object satisfies both the "cause" and 'prejudice" standards of <u>Strickland</u> to establish ineffective assistance of counsel. Trial counsel's ineffectiveness denied Patel a fair trial.

## GROUND FIVE

Trial counsel was ineffective for failing to request a mistrial when the trial judge interfered with the jury's fact finding function that denied Patel a fair trial.

## FACTS AND LAW THAT SUPPORT GROUND FIVE

It is the jury, not the court, which is the fact-finding body. Cooper v. Chastin, 810 F.2d 200 (6th Cir. 1986). The jury weighs the contradictory evidence and inferences, judges the creditibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reliable. Cooper v. Chastin, supra. Jury questions always require delicate and careful handling by the trial judge. Responding to the jury's questions is not the time for ad libing. Trial judges are mineful at this stage of the proceedings that great care is required that nothing be said out of context which might push the jury in one direction or another. Where it is possible to answer a jury question by refering them to the originally agreed upon instructions, is the safest. James v. v. Gulf Broadcast Group, (6th Cir. 1986).

Here the trial court's response to the jury's questions to Agent Peoples sent a message to the jury that it need not look beyond the evidence presented by the government and need not consider the "records from the drug company" and need not consider "why the government did not request the records from the drug companies". The trial court's response conveyed the Government

24.

and prosecution's view that the pharmaceutical/drug companies records were not relevant or material to the charges in the indictment. Patel's jury knew from the facts they has seen so far that the drug company records were evidence relevant to the charges against Patel and the jury wanted to know why the government had not requested those records. The jury wanted to see the drug company records be introduced into the case and to know why the government had not requested those records, but the jury was deprived of that evidence and knowledge by the trial courts interfering with the jury's fact finding function.

When the trial court refused to allow Agent Peoples answer the jury's questions trial counsel Mr. Niskar was ineffective for not seeking a mistrial after the government rested its case."A judge may declare a mistrial and discharge a jury only if taking into consideration, there is a manifest necessity for the act, or the ends of justice would otherwise be defeted. Courts are to excercise a sound discretion on the subject and grant a mistrial on the basis of manifest necessity with great caution, under urgent circumstances, and for every plain and obvious causes". United States v. Colvin, 598 F.3d 242 (6th Cir. 2010). Here there existed the "manifest necessity" for a mistrial because the jury was deprived of the very evidence that would have proven that the Government could not prove its case of "billing but not dispensing" drugs to its customers who are beneficiaries of Medicaid, Medicare, Blue Cross and Blue Shield Insurance Company. If Agent Peoples would have been allowed to answer the jury's question concerning "why the government had not requested the drug company records"

25.

Agent Peoples answer - no matter what it might be - would have opend the door for some of the defense counsels to have cross-examined Agent Peoples about the McKesson records. See United States v. Collins, 226 F.3d 456, 460 (6th Cir. 2000)"counsel allowed to ask additional question relating to jury's questions". Id. at 640.

### What The McKesson Records Would Have Shown

The government prosecutors told the jury over 40 times that the case against Patel was "billing and not dispensing" medications to Medicaid, Medicare and Blue Cross and Blue Shield health care beneficiaries. The drug company (McKesson) records would show the government's theory of a "billing and not dispensing" scheme was an imposibility. Before a beneficiary of Medicare, Medicaid, Blue Cross and Blue Shield can obtain any medications from a pharmacy the beneficiary must first provide (a) a picture identification (b) Medicaid, Medicare or Blue Cross and Blue Shield card and Plan Number (c) provide signature that matches signature on photo identification. Once the beneficiary provides picture identification, provider card and plan number and signature that information is stored in the pharmacy computor and electronocally sent to McKesson Corporation. McKesson must have the above listed information in order to bill Medicaid, Medicare or Blue Cross and Blue Shield. This is a "failsafe system" developed by Mediaid, Medicare, and Blue Cross and Blue Shield to insure that fraudulant scheme such as the government's alleged "billing but not dispensing" scheme cannot not succeed.

26.

The McKesson records would have shown that all medications billed to Medicaid, Medicare and Blue Cross and Blue Shield beneficiaries were dispensed after they signed for their medications. The beneficiaries signatures are exculpatory evidence that all medications signed for were dispensed. There are thousands of Medicaid, Medicare and Blue Cross and Blue Shield beneficiaries who obtained their medications from Patel pharmacies and provided their signatures to obtain their medications. Not a single one of those beneficiaries have complained that they were not given their medications after having signed for them. At trial the government never brought in a single Medicaid, Medicare or Blue Cross and Blue Shield beneficiary to testify that they did not have their medications dispensed to them after signing for the medications at a Patel pharmacy. The government did not prove the acts of "billing but not dispensing" because they could not, because it never happened. The McKesson records would have shown the Government's case against Babubhai Patel was fabricated by two government prosecutors who had wasted millions of dollars of tax payers money over a period of several years conducting an investigation that turned up no criminal acts perputrated by Babubhai Patel and Patel Pharmacies. In an attempt to save face the prosecutors made deals with some patel pharmacies employees who had admitted they had billed but not dispensed medications and then sold the wihheld medications in New York City.

At the trial of Vinod Patel the Brother of Babubhai Patel Government witness Atulkumar Patel (no relation to Vinod Patel or Babubhai Patel) testified that that it was his co-worker

27.

"Lalit Patel" (not related to Vinod Patel or Babubhai Patel) had devised the "bill but not dispense" scheme and with that scheme had stolen hundreds of thousands of dollars from the Patel pharmacies and had transported those non-dispensed drugs to New Jersey wher they had found a buyer for the stolen drugs who's name was "Manoj". Atulkumar Patel further testified that the "bill but not dispense"was a secret scheme that neither Vinod Patel or Babubhai Patel knew about. Atulkumar Patel testified that he was not involved with Bob Patel (Babubhai Patel). Under cross-examination by Vinod Patel's trial attorney Richard Beuke Atulkumar Patel testifed to the following in answer to Mr. Beuke's questions:

> MR. BEUKE: Well, you got away with all the money that you garnered in your involvement with Bob Patel and Lalit Patel, didn't you?
>
> ATULKMAR PATEL: Bob Patel?
>
> MR. BEUKE: Yeah.
>
> ATULKMAR PATEL: I wasn't involved with Bob Patel. (See Trial Transcript, Volume 3, page 149, lines 15-19)

The testimony of Government witness Atulkumar Patel shows that Babubhai Patel had nothing to do with the "bill but not dispense" scheme the government charged Babubhai Patel with in the indictment in Count One Health Care Fraud Conspiracy. It was the Patel Pharmacies employees who had devised the "bill but not dispense" scheme and sold the non-dispensed drugs to others. It was not Babubhai Patel as the Government alleged. A reading

28.

of Atulkumar's testimony under cross-examination by defense attorney Mr. Richard Beuke shows Babubhai Patel is actually innocent of the "bill but not dispensed" conspiracy scheme. (See Exhibit C , Trial Transcript, Volume 3, Pages 143-152. attached hereto). If Babubhai Patel's jury would have heard the testimony of Government witness Atulkumar Patel given at Vinod Patel's trial under cross-examination by Mr. Beuke Patel's jury would not have found Babubhai Patel guilty of the "billing but not dispensing" scheme charged in Count One of the indictment.

The McKesson Corporation records would have shown that there was no "billing but not dispensing" scheme being perputrated by Babubhai Patel. The McKesson records will show that there never was any "billed but not dispensed" drugs returned to McKesson, and that Babubhai Patel never received any money for any drugs returned to McKesson. As shown by the testimony of Government witness Atulkumar Patel billed but not dispensed drugs were sold to other pharmacies in New Jersey and that Babubhai Patel had no knowledge his employees were billing but not dispensing drug and selling those withheld drugs to others in New Jersey.

Further proof that Babubhai Patel had nothing to do with the "billing but not dispensing" scheme is the testimony of Governtment's witness who testified at the trial of Vinod Patel. Under cross-examination by defense attrney Richard Beuke Government witness Pradeep Pandya testified that Mehul Patel and Hiren Patel (no relation to Vinod Patel or Babubhai Patel) had opened the

29.

"Park Shelton" pharmacy and started running the "bill but not dispensing scheme. Predeep Pandya testified they made a million dollars in seven months and put it in their pockets. If Babubhai Patel was a part of the billing but not dispensing scheme why did Predeep Pandya, Mehul Patel and Hiren Patel put all of the million dollars they made through billing but not dispensing in their own pockets and not share any of the money with Babubhai Patel? (See Trial Transcript, Volume 5. pages 78-80. copy attached hereto).

At the trial of Vinod Patel, Government witness Hiren Patel under cross-examination by defense attorney Mr. Richard Beuke testified and admitted that he and Mehul Patel and Predeep Pandya had stolen $300,000 each of medications from Babubhai Patel. It was Babubhai Patel's employees who were conspiring to defraud Babubhai Patel and not Babubhai Patel conspiring to defraud Medicaid, Medicare and Blue Cross and Blue Shield Insurance Company. The only thing Babubhai Patel is guilty of is not keeping a closer watch on his employees.

Patel's trial counsel Mr. Niskar was ineffective for failing to move for a mistrial when the trial judge refused to allow government witness Agent Lafell Peoples answer the jury's questions concerning the drug company records. If counsel would have requested a mistrial there would have been a reasonable probability of a different outcome to this case. Patel was denied a fair trial due to ineffective assistance of counsel.

## GROUND SIX

Trial counsel was ineffective for failing to investigate and interview and call witnesses for the defense.

### FACTS AND LAW THAT SUPPORT GROUND SIX

The United States Court of Appeals has granted relief when counsel failed to investigate, particulary when counsel declined to interview key defense witnesses. Poindexter v. Booker, 301 Fed. Appx. 522 (6th Cir. 2008). The Sixth Circuit has explicitly stated that counsel's duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. The failure to interview key witnesses is objectively unreasonable in light of Strickland. Poindexter v. Booker, supra.  Under Strickland, trial counsel has a duty to investigate his case. Stewart v. Wolfenbarger, 468 F. 338, 356 (6th Cir. 2005).  In the instant case trial counsel made no attempt to investigate or interview witnesses who had information concerning Patel's innocence. Here trial counsel presented no theory of the case, made no opening statement and put forth no evidence. Counsel's decision not to present a witness defense was  not based on sound trial strategy and prejudiced the outcome of Patel's trial, especially where counsel presented not other defense and no evidence of Patel's innocence.

Prior to trial there existed available witness who's testimony would have supported Patel's innocence and have shown the governments case was no more than a fabrication based on the testimony of cooperating co-defendant who testified it was them who had committed the crimes and not Babubhai Patel.

31.

The failure to investigate or call a particular witness can constitute ineffective assistance of counsel in violation of the Sixth Amendment. But cases in which courts have found ineffective assistance under those circumstances involved not only a complete failure on the part of counsel to investigate the witness, or explain the failure to investigate, but also a showing that the witness or witnesses whom counsel failed to investigate did, in fact, have favorable testimony to offer. English v. Collins, 557 F. Supp 2d 843 (6th Cir. 2008). Here Patel's ineffective assistance of counsel claim meet the standard cited above in English v. Collins. Here not only did Patel's trial counsel fail to investigate particular witnesses that Patel request he interview, but also failed to explain why he failed to investigate those witnesses. Here Patel has identified those witnesses who his trial counsel failed to investigate and has identified the favorable testimony those witnesses possessed. Patel has identifed those witnesses as (1) McKesson Corporation Employees, and (2) Medicaid, Medicare and Blue Cross and Blue Shield beneficiaries. Through no fault of his own   Patel has not been able to obtain Affidavits from McKesson Corporation Employees to support this §2255 motion. Patel has been advised by Kimber Tate, Manager, McKesson Litigation Support Services in San Francisco, Ca, (Phone Number 415-983-8300), that if a Subpeona was issued for McKesson Employees to testify concerning McKesson's Safeguard System and McKesson's business transactions with Patel Pharmacies McKesson Employees would testify accordingly, but McKesson employees could not provide any Affidavits without a subpeona.

32.

Here Patel's counsel gave no opening statement or theory of the case not as trial strategy, but because he was unprepared had no witnesses to present for the defense and had not developed Patel' only available "witness defense". Patel's trial counsel did not conduct an adequate investigation of the case before trial and as a results Patel's defense suffered the consequences. Also relevant to counsel's ineffectiveness is the fact that while Patel was detained in the Federal Detention Center at Milan, Michigan, prior to trial. Trial counsel Mr. Niskar only came to visit Patel one time in fourteen (14) months to confer with Patel and advise Patel of the progress of counsel's investigation. At that one visit Mr. Niskar assured Patel that he was requesting McKesson records and was investigation McKesson employees, specifically  "Cindy Sterling" of the Michigan McKesson Office in Livonia, Michigan. Mr. Niskar assured Patel he would call Cindy Sterling as a defense witness but for no explained reason failed to do so. At trial it was readily revealed that Mr. Niskar had neither subpeoned McKesson records or Cindy Sterling.

Patel also discussed with Mr. Niskar the importance of investigating Medicaid and Medicare and Blue Cross and Blue Shield beneficiaries and interviewing beneficiaries who had filled their prescriptions at Patel Pharmacies. Patel told Mr. Niskar that he could obtain a list of the customer/beneficiaries from Government Agents who had posession of the Patel Pharmacies computors. Patel advised Mr. Niskar that the pharmacy computors contained the contact information for the beneficiaries who had prescriptions filled at various Patel Pharmacies. Mr. Niskar assured Patel that

33.

he would obtain a listing of the beneficiaries and interview
a number of them to determine their value as defense witnesses.
Mr. Niskar never obtained a listing of the Medicaid, Medicare or
Blue Cross and Blue Shield beneficaries, and he did not interview
of the benefeciaries as he told Patel he would do. Mr. Niskar
knew that the Medicaid, Medicare and Blue Cross and Blue Shield
beneficiaries would be the most important evidence for the defense
because the Government's whole case turned on the "bill but not
dispense" scheme and that scheme could only be possible if the
beneficiaries did not have their medications dispensed to them
after signing for the medications. Only the beneficiaries know
whether or not Patel Pharmacies dispensed their medications or
withheld their medications after signing for them. Out of the
thousands of beneficiaries if the jury would have heard only ten
(10) of them testify that they always had their medications
dispensed to them at a Patel Pharmacy after signing for their
medications threr would have been a different outcome to the
case. Here trial counsel's ineffectiveness denied Patel a fair
trial. Patel rqeuests his conviction be vacated and he be granted
a new trial.

## GROUND SEVEN

Trial counsel was ineffective for not requesting a mistrial when three weeks into trial the Government revealed it had withheld exculpatory evidence in the form of McKesson Pharmaceutical Corporation Administrative Investigation Report and McKesson records.

## FACTS AND LAW THAT SUPPORTS GROUND SEVEN

In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held that, where the accused makes a pre-trial request for evidence favorable to his case, the government violates his due process rights in suppressing, such evidence where it is material either to guilt or to punishment, irrespectively of the good faith or bad faith of the prosecution. It matters little whether the the government suppresses the evidence out of oversight or guile. Id. at 373 U.S. 88. In the instant case defense counsel prior to trial made a request for specific favorable evidence in the form Administrative Investigation Reports and McKesson Records. (Trial Transcript, Volume 14, page 171, lines 21-25). Within the meaning of **Brady** the defendant need not show the evidence would likely lead to acquittal. United States v. Bagley, 47 U.S. 667, 105 S.Ct. 3375, 87 L. Ed. 2d 481 (1985); United States v. Frost, 125 F.3d 346 382 (6th Cir. 1997). The Supreme Court has stated "the question is not whether the defendant would more likely than not have received a different verdict with the suppressed evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence". See Strickler v. Green, 527 U.S. 263, 289-90, 119 S.Ct. 1936, 144

35.

L.Ed. 2d 286 (1999)(quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 434,
115 S.Ct. 1555, 131 L.Ed @d. 490 (1995). Accordingly a defendant
must prove a <u>**Brady**</u> violation "by showing that the favorable evidence
could be reasonably be taken to put the whole case in such a
different light as to undermine confidence in the verdict".
<u>Kyles</u>, 514 U.S. at 435. The Supreme Court holde that a "true
<u>**Brady**</u> violation" has three aspects. <u>Stickler</u>, 527 U.S. at 281.
(1) the evidence at issue must be favorable to the accused, either
because it is exculpatory, or because it is impeaching; (2)
the evidence must to have been suppressed by the State, either
willfully or inadvertantly; and (3) and prejudice must have
ensued". Id. at 281-82. A deprivation of due process occurs where
all three aspects are present. <u>United States v. White</u>, 492 F.3d
380, 410 (6th Cir. 2007). Here the suppressed evidence is favorable
to Patel because it is exculpatory and the lack of that evidence
caused prejudice to Patel's defense because Patel was unable to
prove his innocence without the suppressed evidence.

## Suppressed Evidence

The evidence withheld by the Government is favorable to
Patel because the evidence shows the Government's case against
Patel is a fabricated impossible "bill but not dispense" scheme
that will be disproved by the McKesson Reports and Records. The
Government prosecutors willfully withheld the Administrative
Investigation Report of Mckesson and withheld the McKesson
Records because they knew the McKesson Records would show their
case against Patel was a fabrication and a miscarriage of justice.

## Withheld McKesson Records Are Exculpatory

After telling the jury over 40 times that the case against Patel was "billing and not dispensing" the government cannot deny that its case against Patel is billing and not dispensing. The flaw in the government's theory of "billing and not dispensing" is that "not dispensing" is an impossibility for the following reasons:  Before a beneficiary of Medicade, Medicare or private insurance health care provider can obtain any medications from a pharmacy the beneficiary must first provide (a) picture Identification (b) Medicade, Medicare, Insurance card and Plan Number; and (c) provide signature. Once a beneficiary provides picture Id, provider plan number and signature that information is stored in the pharmacy computer and electronically sent to McKesson Corporation. McKesson must have the above listed information in order to bill Medicade, Medicare or Insurance provider. McKesson then stores that information in its computer system.

The McKesson records will show that all medications billed to Medicade, Medicare and Insurance providers were dispensed to the beneficiaries after they signed for the medications. The beneficiaries signatures are exculpatory proof that all medications were dispensed. There are thousands of Medicade, Medicare and Insurance providers beneficiaries who obtained their medications through Patel Pharmacies and provided their signatures in order to obtain their prescribed medications. Not a single one of those beneficiaries have complained that their were not given their medications after having signed

37.

for them. At trial the government never brought in a single Medicare, Medicare or Insurance provider beneficiary to testify that they did not not have their medication dispensed to them after signing for the medications. The government did not present any evidence that the beneficiaries did not have their medications dispensed to them by Patel Pharmacies. The government did not prove the illegal acts of "billing and not dispensing" that it told the jury that Babubhai Patel had committed as part of the government's theory of the charged crime.

The McKesson records that the government withheld from the defense would have placed Patel's case in a whole different light as to undermine confidence in the verdict. Kyles, 514 U.S. at 435. Even the jurors had insight enough to ask why the government had not produced the records from the drug companies. (See Volume 21, page 72, lines 15-17). Had Patel jurors seen the McKesson records that show the signatures of all the Medicade, Medicare, and Insurance providers beneficiaries who obtained their medications from Patel Pharmacies the jurors would realize that the government had not proven the Patel Pharmacies not dispensed the billed for medications and the jurors would have viewed the government's case against Patel in a different light. The McKesson records are exculpatory in nature and consist of **Brady** materials. Patel was denied a fair trial.

Unless Patel could have retained the medications billed

for and signed for by thousands of customers/beneficiaries Patel could not realize a financial gain from the "billing and not dispensing scheme" alleged by the government prosecutors. Out of the thousands of customers/beneficiaries that the government alleges did not have their signed for medications not dispensed to them by Patel Pharmacies surely some of them would have complained to Medicare, Medicade, Blue Cross and Blue Shield, FBI, local law enforcement or someone about not receiving their billed and signed for medications from Patel Pharmacies. The records of the case show that Medicare, Medicade or any Insurance Health provider received any complaints from any of the beneficiaries that after signing for their medications Patel Pharmacies refused to dispense their medications to them. It was impossible for Patel Pharmacies to withhold and not dispense medications to thousands of Medicare, Medicade, and Insurance Health care provider beneficiaries after they had provided Identification, Claim Numbers, and signatures for their medications.

## Ineffective Assistance Of Counsel

Patel's trial counsel knowing the importance of the McKesson Records to Patel's defense was ineffective for not requesting a mistrial, when three weeks into trial the Government prosecutors revealed the Government had conducted an Administrative Investigation of McKesson Corporation and had intentionally withheld the invstigation Report from the defense attorneys. Patel's trial counsel Mr. Niskar did not raise a **Brady** violation objection and

39.

did not request a "mistrial". Here if Mr. Niskar would have argued
for a mistrial based a <u>Brady</u> violation for withholding the McKesson
Investigation Report and McKesson Records there is a reasonable
probability that the trial judge (Judge Tarnow) would have granted
a mistrial.

To establish that his trial counsel was ineffective, Petitioner
must prove that (1) "counsel's performance was deficient" and (2)
"counsel's errors were so serious as to deprive the defendant of
a fair trial, a trial whose results is reliable". <u>Strickland v.</u>
<u>Washington</u>, 466 U.S 668, 687, 104 S.Ct. 2052, 80 L. Ed. 2d 674
(1984). Following <u>Strickland</u>, the Sixth Circuit has said that the
Petitioner must establish that: "(1) counsel's performance fell
below an objective standard of reasonableness, and (2) there is
a reasonable probability that, but for the deficiency, the outcome
of the proceedings would have been different". <u>Griffin v. United</u>
<u>States</u>, 330 F.3d 733, 736 (6th Cir. 2003). In the instant case
it was unreasonable for Patel's trial counsel Mr. Niskar not to
have raised a <u>Brady</u> violation objection and requested a mistrial
after discovering three weeks into  trial that the government
prosecutors had withheld the very exculpatory evidence that could
have proven Patel's innocence, the McKesson Investigation Report
McKesson Records. Under the circumstances counsel's failure to
raise a <u>Brady</u> violation objection and failing to request a mistrial
satisfies the <u>Strickland</u> requirement for "cause". Prejudice under
<u>Strickland</u> is establish because Patel was deprived of his only
available defense by counsels deficient performance.

40.

If Patel's trial counsel would have requested and obtained a mistrial Patel would have ample time before a re-trial to obtain the McKesson Investigation Report and the McKesson records that will prove that the government's case an impossibility and that Patel is actually innocent of the charges. Patel was denied a fair trial due to ineffective assistance of counsel and Patel requests his conviction be vacated and he be granted a new trial. If counsel would have requested and obtained a mistrial Patel may have won a dismissal of the indictment based on prosecutorial misconduct. Patel is entitled to a new trial.

## GROUND EIGHT

Trial counsel was ineffective during jury selection phase of the trial (voir dire) for failing to ask prospective jurors if they "were participants in the Government Health Care Programs, Medicaid, Medicare, or Blue Cross and Blue Shield Insurance of Michigan.

## FACTS AND LAW THAT SUPPORTS GROUND EIGHT

Counsel is granted deference when conducting voir dire. An attorney's actions during voir dire are considered matters of trial strategy. A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown chosen to be so ill-chosen that it permeats the entire trial with obvious unfairness. Holden v. Palmer, 588 F.3d 328 (6th Cir. 2009). In the instant case the whole trial was awash with unfairness due to counsel's failure to question prospective jurors to bring to light whether or not they were participants in the any of the Government Health Care Programs, Medicaid, Medicare, or Blue Cross and Blue Shield Insurance of Michigan. The Sixth Amendment right to an impartial jury trial sets the minumim standards for voir dire and "the essential demands of fairness" Aldridge v. United States, 283 U.S. 308, 310 (1931). Preservation of the opportunity to prove actual bias is a guarantee of a defendant's constitutional right to a fair trial. Dennis v. United States, 339 U.S. 162, 171-72 (1950).

Due to the diverse make up of the jury it is highly possible that one or more of the jurors were participants or beneficiaries of a Government Health Care Program, Medicaid, Medicare or Blue

42.

Cross and Blue Shield Insurance Company of Michigan. Because of the nature of the Health Care Fraud charges against Patel and the other co-defendants any juror who was a participant in Medicare, Medicaid, Or Blue Cross and Blue Shield Insurance Programs would necessarily have to be challenged and stricken from the jury due to the very real possibility of impartiality and a harboring of prejudice and bias against defendants who would defraud the very Health Care Program they were the recipients of.

Trial counsel should be prepared to demonstrate that certain factors require careful inquiry because they are "inextricably linked to the trial". Cordero v. United States, 456 A.2d 837, 842 (D.C. 1983). Patel's counsel was not prepared to address the prospective jurors concerning whether or not they were participents of Medicaid, Medicare or Blue Cross and Blue Shield Insurance Company. It would only take one juror to harbor impartiality to deny Patel a fair trial. Upon hearing the nature of the charges (Health Care Fraud) against Patel any juror who was a recipient of Medicaid, Medicare or Blue Cross and Blue Shield Health Care Insurance would naturally feel that they "are also victims" of the defendants that did impare their ability to be impartial and fair. In fact any person receiving Medicaid, Medicare, Blue Cross and Blue Shield benefits from those Health Care Programs would be a victim based on fraudulant criminal acts committed against those Health Care Agencies.

Because Patel's counsel did not question any of the jurors as to whether or not they were participants in Medicaid, Medicare,

43.

Blue Cross and Blue Shield Insurance Health Care Programs, it cannot be determined whether or not any of the jurors harbored any deep personal feelings that they were the victim in Patel's case. A reasonable attorney would have known that whether or not prospective jurors were participating in Medicare,Medicaid, Blue Cross and Blue Shield Health Care Programs would have been one of the most important questions to be asked of all the jurors, in order to reveal any strong personal feelings that would impare the jurors to be impartial and fair.

Here counsel's deficient performance satisfies the requirements of determining ineffective assistance of counsel under <u>Strickland v. Washington</u>, 446 U.S. 668 (1984). Counsel's failure to question the jurors concerning whether or not the were participating in Medicaid, Medicare, or Blue Cross and Blue Shield Healt Care Programs establishes "cause". Prejudice is established because based on counsel failure to ask jurors if they were participating in any of the health care programs involved it cannot be said that Patel was convicted by an impartial and fair jury.

Due to ineffective assistance of counsel Patel was denied a fair trial and   his conviction should be vacated and he be granted a new trial.

44.

## GROUND NINE

Trial counsel was ineffective for failing to object to Government's expert witnesses testifying as lay witnesses and for Government not providing required notice and summary of expert witnesses testimony.

## FACTS AND LAW THAT SUPPORT GROUND NINE

Here the trial judge made no findings required under the trial judge's gatekeeping obligations under the Federal Rules of Evidence to insure that witnesses are held to the proper standard of testimony based on their qualifications an expert witness or a lay witness.

See United States v. Ganier, 468 F.3d 920, 925 (6th Cir. 2006)"Lay testimony is improper where it encompasses opinions that"call for specialized skill or expertise". See United States v. White, 492 F.3d 380 (6th Cir. 2007) citing United States v. Strange, 23 Fed. App'x. 715, 717 (9th Cir. 2001)(Observing that testimony regarding Medicare regulations and rembursement procedures was entirely appropriate for an expert witness). The Sixth Circuit holds that Medicare auditors who's testimony "relied on a significant degree on specalized knowledge over years of experience as Medicare auditors testifying to the structure and proceedings inherant in the medicare Program, as well as their understanding of various terms, constituted **expert testimony**. See United States v. Poulson, 2007 U.S. Dist. Lexis 103070 (E.D. Mich. 2007) citing United States v. White, 492 F.3d 380, 399-400 (6th Cir. 2007) also see United States v. Garcia, 413 F.3d 201, 216 (2nd Cir. 2005) (holding that a law-enforcement officer could not testify as a lay witness where

his "reasoning process depended ... on his specalized training and experience in narcotice trafficaking).

Especially in the case of government witness Dr. Drake who the trial judge determined qualified as an expert witness but would not declare Dr. Drake as an expert witness to the jury, the trial judge errered in failing to perform his "gatekeeper" function under Daubert v. Merrell Dow Pharmaceuticals, Inc., 526 U.S. 579, 113 S.Ct. 2768, 125 L.Ed. 2d 469 (1993) and Kumho Tire Company v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed. 2d 238 (1999). when the Court permitted Dr. Drake to testify as a lay person when the Court knew Dr. Drake as well as the others, Mr. Stankweicz, and Ms. Warstler gave testimony that qualified as expert testimony under the Federal Rules of Evidence 702. In the instant case the trial court's failure to performe its "gatekeeping" function allowed the government to present  expert witness testimony under the "guise" of a lay person violating Patel's constitutional right to a fair trial.

Here Patel's trial counsel was prejudiced and suprised by the  government's soliciting expert testimony from Dr. Drake without complying with Rule 702 requirements for expert testimony or disclosure requirenments. Trial counsel was unprepared to effectively cross-examine government witnesses Todd Stankewicz, Michele Warstler and Dr. Drake, because the government never gave notice it was calling those persons as expert witnesses and did not provide a written summary of thier testimony.

Reversable error occurs only where a court erroneously admits evidence that affects the substantial rights of the party. Fed.

46.

R. Evid. 103(a). An error affects a defendant's substantial rights if it is likely to have had a substantial effect on his conviction. <u>United States v. White</u>, 4)2 F.3d 380 (6-h Cir. 2007). Patel's substantive right to a fair trial was affected when the trial court allowed into evidence the testimony of Mr. Stankewicz, Ms. Warstler and Dr. Drake as testimony of a lay witness when in fact they were all expert witnesses. All three witnesses testimony was damaging to Patel's defense because his trial counsel Mr. Niskar was unprepared to cross-examin them concerning their expert training and expert knowledge due to the Government's not declaring Mr. Sankewicz, Ms. Warstler and Dr. Drake as expert witness before trial as required under 702 Fed. R. of Evid. and not providing defense counsel with a summary of the testimony to be given or the contact information of those witnesses.

Patel's trial counsel was ineffective for not objecting to the government's expert witnesses testifying as lay witnesses and for not requesting a mistrial. Counsel's failure to object and request a mistrial constitutes "cause" under <u>Strickland v. Washington</u>, 448 U.S. 668 (1984). The "prejudice" prong of <u>Strickland</u> is satisfied based on the fact that Patel's counsel was unprepared to cross-examine the government's witnesses whos testimony was damaging to Patel's defense. Without Patel's counsel receiving a summary of the government's expert witness testimony counsel could not challenge or question anything the witnesses testified to because their testimoney was beyond the scope of knowledge counsel possessed concerning the rules and

47.

procedures governing the witnesses respective agencies, their expert training and their knowledge. The government witnesses, Mr. Sankewicz, Ms. Warstler and Dr. Drake testimony was designed to go beyond the facts of their respective agencies, Medicaid, Medicare and Blue Cross and Blue Shield. Their testimony was designed and intended to point the finger of guilt at Babubhai Patel and others. Mr. Stankewicz, Ms. Warstler and Dr. Drake were not just testifying as fact witnesses but were testifying as expert witnesses.

It was unreasonable for Patel's trial counsel not to object and request a mistrial especially in light of the trial judge stating that Dr. Drake's testimony qualified as "expert testimony" (Trial Transcript, Vol. 20, page 14-15). When it came to cross-examining Mr. Stankewicz, Ms Warstler and Dr. Drake, trial counsel was like a "lost duck in high weeds" because he had not been provided with a summay of what their expert testimony would entail and counsel was unable to prepare for cross-examination. The cross-examination counsel did conduct was ineffective and failed to limit the damaging effects of the expert testimony had on Patel's defense. Patel's trial counsel was ineffective and Patel was denied a fair trial. Patel requests his conviction be vacated and he be granted a new trial.

48.

## GROUND TEN

Sentencing counsel Robert L. Sirianni was ineffective at sentencing proceedings for failing to investigate the Government's evidence of "loss amount" and to use that same evidence to show there was no loss and no fraud that could be attributed to Babubhai Patel.

## FACTS AND LAW THAT SUPPORTS GROUND TEN

Prior to sentencing Patel retained attorney Robert L. Sirianni to represent him at sentencing. Mr. Sirianni was provided with financial charts prepared by Patsy Aiken, Certified Public Accountant, who prepared the charts based on documentation provided to the defense by FBI Agent LaFell Peoples and the Drug Enforcement Agency (DEA). The financial charts prepared by Patsy Aiken are based on money amounts shown on the Government's documentation that the Government admitted into evidence at Patel's sentencing hearing to show alleged loss amount. Mr. Sirianni submitted Patsy Aiken's Affidavit and financial charts into evidence at Patel's sentencing hearing but did not call Patsy Aiken as a defense witness to testify as to her calculations of money amounts derived from the Government's documentation provided to defense counsel.

At Patel's trial the Government submitted into evidence charts showing amounts of money that Medicaid, Medicare and Blue Cross And Blue Shield payed to Patel Pharmacies during the time frame the alleged fraud charged in the Indictment occured.

49.

## PATSY AIKEN'S AFFIDAVIT AND CHARTS

At sentencing Mr. Sirianni submitted into evidence the Affidavit and Charts prepared by Patsy Aiken, CPA, showing the combined money amounts Patel Pharmacies paid to McKesson Corporation for the purchase of medications sold through Patel Pharmacies. Based on Patsy Aiken's accounting Patel Pharmacies paid McKesson Corporation the amount of $46,642,872.88. The Charts Patsy Aiken prepared are based on figures provided by the Government to the defense based on Banking Records. (See Exhibit A , Affidavit of Patsy Aiken and Charts).

## GOVERNMENT CHARTS

The government's Charts show that Medicaid, Medicare and Blue Cross and Blue Shield, paid to Patel Pharmacies a combined total amount of $64,937,164.36. Medicare paid Patel Pharmacies the amount of $37,770,815.65. Medicaid paid Patel Pharmacies the amount of $20,806,487.57, and Blue Cross and Blue Shield paid Patel Pharmacies the amount of $6,359,872.14. (See Exhibit B , marked GOVERNMENT EXHIBIT 23A).

## GOVERNMENT'S ALLEGED LOSS AMOUNT

The Government alleged that the intended loss amount attributed to Babubhai Patel's alleged health care fraud amounts to $18,955,869.00. (See Patel's Presentence Investigation Report (PSR) page 14, ¶ 11).

Based on the foregoing figures and Exhibits, Patel has shown that Medicare, Medicaid, Blue Cross and Blue Shield paid Patel Pharmacies a combined amount of $64,937,164.36. Patel has shown that Patel Pharmacies paid $46,642,872.88 to McKesson

Corporation. Based on the foregoing Patel has shown the Government attributes to Patel the intended loss amount of $18,955,869.00. The amounts as shown above are based on the Government's information provided in the Charts provided as Supporting Exhibits B  , attached hereto this memorandum of law and fact. If the Government's information as shown it the Government's charts is correct, than simple mathmatics show that there is no fraud loss and no fraud. If the Government would now claim that the figures in its Charts are incorrect, than Patel was denied a fair trial and his sentencing proceedings would be unreliable.

The following figures show there is no fraud loss and no fraud that can be attributed to Patel.

| | |
|---|---|
| Amount paid to Patel Pharmacies by Medicare, Medicaid and Blue Cross and Blue Shield................... | $64,937,164.36 |
| Amount Patel Pharmacies paid to McKesson Corporation.............. | $46,642,872.88 |
| When amount paid by Patel Pharmacies to McKesson Corporation is subtracted from amount paid to Patel Pharmacies by Medicare, Medicaid and Blue Cross and Blue Shield the balance amounts to...... | $18,284,291.48 |

The above figures show that the difference between what Medicare, Medicaid, and Blue Cross and Blue Shield, paid to Patel Pharmacies, and what Patel Pharmacies paid to McKesson Corporation. The difference amounts to $18,284,291.48.

51.

## PATEL PHARMACIES MARGIN OF PROFIT

Prior to trial Mr. Sirianni filed a motion wherein he cited industry-wide profit margins for pharmacies, which experts estimate to be between 22% and 24%. See National Community Pharmacists Association, 2010 NCPA Digest, Executive Summary at 1 (noting that gross margins for independant pharmacies have remained in the 22-24 percent range over between 1999-2009) available at http://www.ncpanet.org/pdf/digest/2010/2010digest-execsum.pdf.

At sentencing Mr. Sirianni submitted that Patel Pharmacies margin of profit was 25%. (Sentencing Transcript, page 17, lines 1-5). The Government did not object to Mr. Sirianni's submission the Patel Pharmacies margin of profit is 25%, and the records show the trial court never addressed the 25% margin of profit issue. In any event it is beyond doubt that Patel Pharmacies have always operated on a 25% margin of profit and in some instances as high as a 30% margin of profit.

Based on a profit margin of 25% Patel Pharmacies profit from the $64,937,164.36, paid by Medicare, Mediacaid and Blue Cross and Blue Shield to Patel Pharmacies would amount to $16,234,291.09.

## GOVERNMENT'S MARGIN OF ALLEGED FRAUD

At both trial and sentencing Government Prosecutor John K. Neal argued that of the $64,937,164.33, paid to Patel Pharmacies by Medicare, Medicaid and Blue Cross and Blue Shield, that 25% of that amount was based on the alleged fraud commited by Patel Pharmacies. As shown above 25% of the $64,937,164.36 would amount to $16,234,291.09. At Patel's sentencing hearing Mr. Neal stated,

the following concerning loss amount percentage,

> "And the 25 percent estimate the Government has
> made and the Court has accepted in the context
> of sentencing hearings for Co-Defendants is
> really a appropriate place for the Court to tag
> into loss amount". (Sentencing Transcript, page
> 15, lines 16-19).

Based on the above cited statement made by Mr. Neal, the Government estimated the loss percentage at 25 percent and the Court has accepted the loss amount at 25 percent as to all defendants.

### THE GOVERNMENT'S ACCOUNTING AND CHARTS FAIL TO ADDRESS PATEL PHARMACIES 25% PROFIT AMOUNTS

The fatal "flaw" in the Government's accounting evidence and charts is that it does not address or figure into it's loss accounting the "Patel Pharmacies 25% profit amounts".

Patel Pharmacies purchased $46,642,872.88 worth of medications from McKesson Pharmaceutical Corportation between 2006 and 2011, and sold those medications to Medicare, Medicaid and Blue Cross and Blue Shield "beneficiaries" between 2006 and 2011 for $64,937,164.36 . (These amounts are based on Government charts, see Exhibits  B    ). The amount of "profit" Patel Pharmacies made from the sale of medications it purchased from McKesson and sold to Medicare, Medicaid and Blue Cross and Blue Shield amounts to $18,284,291.48. The Government's accounting and charts omits any mention of Patel Pharmacies profit amounts. (emphysis added).

The $18,284,291.48, is the difference between what Patel Pharmacies payed for the medications from McKesson and what Patel Pharmacies charged Medicare, Medicaid and Blue Cross and Blue Shield for the medications or simply stated the "amount of profit Patel Pharmacies made from buying and selling the medications.

## "FATAL FLAW"

The fatal flaw in the Governments accounting and case is that there cannot be a 25% loss amount and a 25% Patel Pharmacies profit amount. The following mathmatics shows the Government's case against Patel is flawed.

(a) Amount Patel Pharmacies paid to McKesson Corporation for the Medications sold to Medicare, Medicaid, Blue Cross and Blue Shield ........................... $46,642,872.88

(b) Patel Pharmacies profit amount........ $18,284,291.48

(c) Government's 25% estimated alleged fraud loss .................. $18,955,869.00

(d) Combined Total...................... $83,883,033.36

(e) Amount paid to Patel Pharmacies by Medicare, Medicais, Blue Cross and Blue Shield .................... $64,937,164.36

When the Patel Pharmacies profit amount (b), is added to the amount Patel Pharmacies paid McKesson (a), the total equals the amount paid to Patel Pharmacies by Medicare, Medicaid and Blue Cross and Blue Shiels (e). But when the Government's 25% estimated fraud loss (c) is added to (a)and (b) the total amount (d) exceeds

54.

the total amount the Government alleges that Medicare, Medicaid and Blue Cross and Blue Shield paid to Patel Pharmacies in the Health Care Fraud Conspiracy (e) and that cannot be because the amounts the Government alleges do not match up. The Government's figures show there is no "fraud loss" and no fraud.

## GOVERNMENT LOSS AMOUNT BASED ON 25 PERCENT IS INCORRECT

The Government and the Court agreed 25 percent of the money paid to Patel Pharmacies by Medicare, Medicaid and Blue Cross and Blue Shield was obtained by fraud. The Government presented evidence showing Medicare, Medicaid and Blue Cross and Blue Shield paid Patel Pharmacies $64,642,872.88. The Government submits that the 25 percent fraud loss amounts to $18,955,869.00, and the Court has ordered Patel to pay that amount in restitution. The error is that 25 percent of $64,642,872.88 does not amount to $18,955,869.00, it amounts to $16,234,291.09. Simply mathmatics show that the Government's 25 percent loss amount of $18,955,869.00, exceeds the 25 percent by $2,721,577.91, which is a considerable amount of money.

The above accounting shows the error in the Government alleged intended loss amount and shows the restitution amount $18,955,869.00 that Patel has been ordered to pay is incorrect based on the Government's estimated loss of 25 percent. The amount of restitution Patel must pay should be reduced by $2,721,577.91.

55.

## SUMMARY OF ARGUMENT

Patel's sentencing counsel Mr. Sirianni was ineffective for not investigating the Government's evidence of "intended loss amount" and presenting that same evidence to show there was no loss amount and no fraud. As shown herein the Government's evidence totally ignores Patel Pharmacies "profit amounts" in attempting to show that Patel Pharmacies was engaged in fraudulant activities. When Patel Pharmacies 25 percent profit amount of $16,234,291.09, is added to the Government's accounting of intended loss amount the end results is that Medicare, Medicaid and Blue Cross and Blue Shield would have had to pay Patel Pharmacies a combined total of $81,161,455.47, instead of $64,937,164.36, that was actually paid to Patel Pharmacies. Based on the Government's accounting it is impossible for ther to be 25 percent fraud loss and 25 percent Patel Pharmacies profit amount. Common sense, facts and evidence show that Patel Pharmacies was in business to make a "profit" and was making a 25 to 30 percent profit. What the evidence does not show is that ther could both a 25 percent intended fraud loss and a Patel Pharmacies 25 percent amount of profit. Do the math the figures do not lie or mislead. The issue presented in GOUND TEN shows the Government's case against Patel was craftfully manafactured except for a number of errors that when exposed show the Government's case against Babubhai Patel is a sham and a miscarriage of justice. For instance the Government venemously and reputiciously lamented to the jury that Patel Pharmacies was "billing but not dispensing" medications to thousands of Medicare, Medicaid and Blue Cross and Blue Shield beneficiaries and yet the Government did not produce one single person who would testify

that Patel Pharmacies did not dispense their medication to them. All the Government's witnesses who were Patel Pharmacy employees testified that they had committed criminal acts while working for Babubhai Patel at one of his pharmacies. Government witness Atul Patel testified he stole $500,000.00 worth of medications from the Patel Pharmacy he worked for and he took those stolen medications to New Jersey and sold them. Pinakin Patel testified that he was shorting the customers prescriptions by taking some of the pills from the bottles and selling those pills on the street. The Government witnesses pointed the finger of guilt at Babubhai Patel when in fact it was themselfs that was committing the very acts Patel was charged with. The Government gave those defendant/ witnesses a plea agreement for reduced sentences to get them to testify that it was Babubhai Patel who told them to commit the criminal acts they committed. Patel's only crime is not watching his employees more closley. Babubhai Patel was managing twenty two (22) pharmacies in the Detroit Metropolitan and surrounding area by himself located within a 200 mile area. Patel Pharmacy employees took advantage of the fact Patel was never around to moniter their actions and they all used that opportunity to enrich themselves by the various means the Government charged Patel with committing.

The Government's own evidence (financial charts) as shown herein prove there is no fraud loss and no fraud that can be attributed to Babubhai Patel. An accumulation of trial error presented in Patel's "pending motion for a new trial" and herein this instant 2255 motion show that Patel did not receive a fair trial.

## MCKESSON CORPORATION BILLS MEDICADE MEDICARE AND
## AND PRIVATE INSURANCE PROVIDERS
## NOT PATEL PHARMACIES

The district court, the government's prosecutors, and
the probation department all failed to understand the process
by which Patel Pharmacies bill Medicare, Medicaid and private
insurers in this case thereby making loss amount finding's
unreliable. The pharmaceutical company McKesson Corporation
provides billing to Medicare, Medicaid and private insurers
as a service provided Patel Pharmacies. Patel Pharmacies do
not directly bill Medicare, Medicaid or private insurers.
Patel Pharmacies would electronically provide McKesson Corporation
with billing information such as (1) the customers name and
address (2) the respective health care providers "plan number"
assigned to the customer/beneficiari (3) the type of medication,
amount dispensed and cost, and (4) the customer/beneficiari's
signature showing the customer/beneficiari had received the
medications. The billing department of McKesson Corporation
would then based on the information provided by Patel Pharmacies
formulate a bill and provide that bill to Medicare, Medicaid
and private insurers. Untill Patel Pharmacies provided the
McKesson Corporation with the required foregoing billing
information McKesson would not bill Medicaid, Medicare or any
private insurer on behalf of Patel Pharmacies.

The McKesson Coproration was the subject of testimony and
conversation throughout the trial but no McKesson records were
introduced relating to McKesson billing procedures on behalf of
Patel Pharmacies. Here the trial judge and the Government's
findings are not based on any bills submitted to Medicare, Medicaid

58.

Blue Cross and Blue Shield by Patel Pharmacies as the jury was mislead to believe. Patel Pharmacies never presented any bills to Medicare, Medicaid or Blue Cross and Blue Shield as it was the McKesson Corporation Billing Department who calculated the amounts to be charged and presented the billing to Medicare, Medicaid and Blue Cross and Blue Shield. After receiving billing information from Patel Pharmacies McKesson did "fraudulantly" inflated the price of the medications that were being billed to Medicare, Medicaid Blue Cross and Blue Shield and then charged Patel Pharmacies with the inflated amounts for medications purchased from McKesson. It was McKesson who ultimately benefited from inflating medication prices charged to Medicare, Medicaid and Blue Cross and Blue Shield.

On February 15, 2012, McKesson Corporation entered into a Settlement Agreement with the United States Justice Department and paid the United States more than $190,000,000.00 to resolve "False Claims Allegations". The United States charged that McKesson sold pharmaceuticals to its customers and then reported inflated pricing data to First Data Bank (FDB), a publisher of drug prices that are used by Medicare, Medicaid and Blue Cross and Blue Shield to set payment rates for pharmaceuticals. In the instant case it was McKesson Corporation who defrauded Medicare, Medicaid and Blue Cross and Blue Shield by charging inflated prices.

In April 2014, Babubhai Patel filed a Civil Law Suit against McKesson Corporation based on McKesson charging Patel Pharmacies inflated medication prices for over five years.

Due to ineffective assistance of counsel these facts and evidence that relate directley to the criminal charges gainst Patel

59.

was never made known to Patel's jury. If the jury would have known the true relation of McKesson Corporation to the criminal charges against Patel there would have been a different outcome to the case.  In the instant case sentencing counsel was so unprepared that he failed to understand significance of the Government's evidence of loss and how that very evidence shows there was no fraud loss and no fraud.

60.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Patel's ineffective assistance of counsel claims are directed at Mr. Joseph Niskar, trial attorney and Mr. Robert Sirianni sentencing attorney both proved to be ineffective as show herein. It is the petitioner's burden to show that counsel's errors were so serious that counsel could not be functioning as the counsel guaranteed by the Sixth Amendment. Harrington v. Richter, 562 U.S. 86, 104, 131 S.Ct. 770,178 L.ed. 2d 624 (2011). Moreover the defendant must show that there is reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S, 688 (1984). In Brecht v. Abrahamson, 507 U.S. 619 (1993), the Supreme Court held that as a general principle, habeas petitioners can't obtain collateral relief unless they first prove actual prejudice by showing there was a reasonable probability that the error had a substantial effect on the jury's verdict. In the instant case Patel has made a clear showing that the unprofessional errors made by his attorney's at trial and sentencing had a "substantial and injurious effect on the jury's verdict". Patel's §2255 motion presents "detailed and specific" factual allegations whose resolution requires information outside the record or the judge's knowledge or recollection". Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 71 L. Ed. 2d 473 (1962). Where a petitioner raises claims of ineffective assistance of counsel in a §2255 motion, he need not show "cause and prejudice' for not having raised such claims on direct appeal, as the claims may be properly raised for the first

61.

time in a §2255 motion. In the instant case a pattern of prosecutorial misconduct so infected the proceedings as to warrant habeas relief. The full extent of misconduct hasn't yet come to light and cannot not even be evaluated because the full consequences of misconduct is uncertain until an evidentiary hearing is conducted. Here Patel has provided his "detailed and specific affidavit" which shows that he has actual proof of the allegations going beyond mere unsupported assertions. All of Patel's allegations are supported by the records and Patel has shown where supporting facts and evidence can be found in the records. All of Patel's allegations are supported by Sixth Circuit law and Supreme Court authority. Here the motion and files and records of the case conclusively show that Patel is entitled to relief (2255) and the Court should order the United States Attorney to respond to Patel's allegations, grant a prompt hearing theron, determine the issues and make a finding of fact and conclusions of law with respect thereto. 28 U.S.C. §2255(b).

The burden on the petitioner in a habeas case for establishing an entitlement to an evidentiary hearing is relatively light. United States v. Valentine, 488 F.3d 325 (6th Cir 2007). The defendant's burden to show his right to a hearing is significantly lower than his burden to show he is entitled to §2255 relief. In reviewing a 2255 motion in which a factual dispute arises "the habeas court must hold an evidentiary hearing to determine the truth of the petitioners claims. Turner v. United States, 183 F.3d 474 (1999). In the instant case Patel offeres more than a mere assertion of his innocence, he presents factual narritives of

62.

events that supports his claim of innocence that is neither contridicted by the record nor "inherently incredible" and his claims are supported by the records. At a hearing Patel can prove his ineffective assistance of counsel claims. The records do not conclusively show Patel is entitled to no relief. An evidentiary hearing should be granted. Patel requests the following relief:

1. Order the United States Attorney for the Eastern District of Michigan to file a response to Patel's 2255 motion.
2. Order an evidentiary heraing be conducted.
3. Appoint counsel to represent Patel at such a hearing
4. Require Patel's presence at all hearings.

Respectfully submitted

Date 9|1|2015

Babubhai Patel
Petitioner, pro se.

Babubhai Patel
#46049-039
Federal Correctional Institution
P.O.Box 1000
Milan, Michigan. 48160

63.

## EXHIBITS INDEX

EXHIBIT  A;     Affidavit and Charts prepared by Patsy Aiken
                based on Government information.

EXHIBIT  B:     Government Charts showing Total Amount of
                $64, 937,164.36, paid to Patel Pharmacies
                by Medicare, Medicaid and Blue Cross and
                Blue Shield.

EXHIBIT  C:     Trial Transcript, pages 143-152, from trial
                of Vinod Patel.

EXHIBIT  D:     Affidavit of Babubhai Patel in support of
                motion under 28 U.S.C. §2255.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Criminal No. 11-20468
Hon. Arthur J. Tarnow

vs.

D-1 BABUBHAI PATEL

Defendant.

_____/

## AFFIDAVIT OF PATSY AIKEN

I, Patsy Aiken, having been duly sworn and having personal knowledge of the information contained herein, make oath as follows:

1. I am currently employed as a licensed Certified Public Accountant ("CPA") with Miller & Associates, P.C., located in Ann Arbor, Michigan. I have been a licensed CPA since October 5, 1995.

2. I have been provided copies of documents by counsel for Defendant, Babubhai Patel in the above captioned matter.

3. I have been informed that the documents provided were derived from CDs that were originally provided to counsel for Defendant by FBI Forensic Accountant Lafell Peoples.

4. I have also been provided paper copies of documents which I have been informed were originally provided to counsel for Defendant by the Drug Enforcement Administration ("DEA").

5. The documents provided from the DEA correspond only to the Charter One Bank Account No. 450560-1268, Arisudan Inc., Best Care Pharmacy.

6. After reviewing the paper copies derived from the documents provided by counsel for Defendant, which I have been told were originally produced by FBI Forensic Account Agent Peoples, I have compared and verified the total amounts paid by the pharmacies to pharmaceutical supplier McKesson Corporation for the months and accounts for which documents were provided. The verified spreadsheets and summarized amount for each pharmacy is affixed hereto as *Exhibit A*.

7. After reviewing the paper copies from the documents provided by counsel for Defendant, which I have been told were originally produced by the DEA, I have compared and

EXHIBIT - A
(4-pages)

EXHIBIT

A

1

verified the total amounts paid by the pharmacy to pharmaceutical supplier McKesson Corporation for the months and accounts for which documents were provided. The verified spreadsheets and summarized amount for the pharmacy is included in *Exhibit A*.

8. Based upon my review of documents for the months and accounts provided by counsel for Defendant, which I have been told were originally produced by FBI Forensic Accountant Lafell Peoples and the DEA, the documents indicate payments in the amount of $46,642,872.88 to pharmaceutical supplier McKesson Corporation by the pharmacies/corporations so identified in *Exhibit A*.

Further your Affiant sayeth not.

Patsy Aiken  12/21/12

Ms. Patsy Aiken

Sworn and subscribed to before me
this _21_ day of December, 2012

Notary Public

BEVERLY GRIFFOR
Notary Public, State of Michigan
County of Washtenaw
My Commission Expires 09-30-2014
Acting in the County of *Washtenaw*

2

Exhibit A

| Corporation Name | Comerica Bank | | |
|---|---|---|---|
| | Name of Pharmacy | Account Number | Total McKesson Debits, per review of bank stmts. provided |
| Levan Pharmacy Inc | Levan Pharmacy | 18511791958 | 154,389.00 |
| Ananata LLC | Prestige Drugs | 1852411337 | 113,416.35 |
| KOACH3 Inc | Prestige Pharmacy | 1852630845 | 1,222.20 |
| Levan Pharmacy Inc | Levan Pharmacy | 1851905248 | 90,519.22 |
| Achut Inc | Fenkel Pharmacy | 1852411527 | 0.00 |
| Ahak Co | Preferred Pharmacy | 1852630878 | 901,098.00 |
| VIK Corp | Diamond Pharmacy | 1852672755 | 91,134.97 |
| Top Co | Day Drugs | 1852672565 | 0.00 |
| DMXRX LTD | Detroit Care Pharmacy | 1852411543 | 2,754,746.24 |
| Ambik Inc | Caring Pharmacy | 1851905576 | 5,611,927.72 |
| RPV2 Co | Sapphire Apothecary | 1852630753 | 1,118,529.71 |
| Laxmjgl | Highland Park Pharmacy | 1851905584 | 0.00 |
| V J R Inc | Tri-City Pharmacy | 1852528965 | 834,914.10 |
| VIKR LTD | Noble Pharmacy | 1852672714 | 0.00 |
| Rio Detroit Inc | Wayne Pharmacy | 1852672573 | 136,511.34 |
| Levan Pharmacy | Kalika Corporation | 9409965721 | 0.00 |
| Levan Pharmacy Inc | Kalika Corporation | 1851905305 | 1,724,221.87 |
| Siddhi Inc | Rapid Pharmacy | 9409965747 | 0.00 |
| Siddhi Inc | Rapid Pharmacy | 1852065893 | 952,728.81 |
| Paul Rotarius Inc | Grand River Pharmacy | 1852530096 | 1,756,933.15 |
| Anatrup Inc | Grand River Pharmacy | 1851943603 | 2,060,932.10 |
| Madhusudan Inc | Highland Park Pharmacy | 1852411618 | 1,558,409.93 |
| Big D Corp | Friendly Pharmacy | 1852630738 | 132,318.13 |
| VIK4 Corp | RX Now Pharmacy | 1852630688 | 352,580.70 |
| ADP2 Co | Davenport Pharmacy | 1852630829 | 90,876.00 |
| Rav3 Co | Glendale Pharmacy | 1852630852 | 576,689.05 |
| Keshinudan Inc | Eastpointe Pharmacy | 1852411204 | 47,122.60 |
| PCD Corp | Prestige Drugs | 1852528908 | 186,104.18 |
| Anant Inc | Responsible Care Pharmacy | 1852411501 | 39,270.59 |
| BJP2 Inc | Commerce Township Pharmacy | 1852630837 | 222,079.48 |
| Levan Pharmacy | Kalika #2 | | 80,938.80 |
| | | | 21,589,614.24 |

Exhibit A

| | Charter One Bank | | |
|---|---|---|---|
| Corporation Name | Name of Pharmacy | Account Number | Total McKesson Debits, per review of bank stmts. provided |
| SBC Inc | Caring Pharmacy | 451340-019-5 | 3,804,238.93 |
| Vischnu Inc | Preferred Care Pharmacy | 451052-312-1 | 1,115,460.89 |
| Riddhiji Inc | Care For You Pharmacy | 451-052-316-4 | 1,493,443.92 |
| PJP2 Inc | Taylor Apothecary | 451052-315-6 | 2,787,464.36 |
| Ambik Inc | Caring Pharmacy | 450926-688-9 | |
| Tibay Inc | Baycare Pharmacy | 451052-378-4 | 0.00 |
| Ambik Inc | Preferred Pharmacy | 451052-314-8 | 426,762.57 |
| Janadharn Inc | Rapid Drugs Pharmacy | 450560-123-3 | |
| Janadharn Inc | Rapid Drugs Pharmacy | 450560-122-5 | |
| Arisudan Inc | Best Care Pharmacy | 450560-1268 | 1,966,509.03 |
| Kalika Corp | Levan Pharmacy | 450926-689-7 | |
| Ganeshji Inc | Be Well Pharmacy | 451052-309-1 | 4,979,487.88 |
| CG Inc | Airport Apothecary | 451052-377-6 | 160,016.27 |
| Siddhi Corp | Rapid Pharmacy | 450926-686-2 | |
| Janadharn Inc | Rapid Drugs Pharmacy | 450560-121-7 | 4,508,563.18 |
| SMT Inc | Fenkell Pharmacy | 451052-381-4 | 16,852.02 |
| Keshav Inc | Prestige Pharmacy | 451052-308-3 | 47,664.80 |
| P3 Inc. | Rapid Pharmacy | 451052-317-2 | 0.00 |
| SBC Inc. | Caring Pharmacy | 451340-019-5 | |
| Keshav Inc | Prestige Pharmacy | 451052-306-3 | 0.00 |
| Dearborn Community | Independent Pharmacy | 450926-669-2 | 3,746,794.79 |
| Dearborn Community | Independent Pharmacy | 450926-669-2 | 0.00 |
| CAPS 3 INC | Noble care pharmacy | from invoice | 0.00 |
| | | | |
| | | | 25,053,258.64 |

| Medicare - Total Paid By Pharmacy | |
|---|---|
| Pharmacy | Paid Amount |
| CARING PHARMACY | $7,380,994.31 |
| DETROIT CARE PHARMACY | $4,410,347.32 |
| GRAND RIVER PHARMACY | $3,895,078.71 |
| RAPID DRUGS | $3,370,792.32 |
| BEST CARE PHARMACY | $3,187,080.70 |
| INDEPENDENT COMMUNITY PHCY | $2,636,253.39 |
| HIGHLAND PARK PHARMACY | $2,611,556.19 |
| RAPID PHARMACY | $1,526,194.56 |
| TAYLOR APOTHECARY | $1,395,923.42 |
| KALIKA CORPORATION | $1,069,426.90 |
| NOBLECARE PHARMACY | $907,164.05 |
| TRI-CITY APOTHECARY | $860,137.19 |
| LEVAN PHARMACY III | $843,952.84 |
| BE WELL PHARMACY | $842,220.17 |
| CARE FOR YOU PHARMACY | $715,855.70 |
| PREFERRED CARE PHARMACY | $628,178.16 |
| SAPPHIRE APOTHECARY | $441,316.12 |
| PREFERRED PHARMACY | $338,913.05 |
| GLENDALE PHARMACY | $249,890.16 |
| PRESTIGE DRUGS PHARMACY | $133,235.95 |
| RX NOW PHARMACY | $131,559.57 |
| AIRPORT APOTHECARY | $54,155.89 |
| WAYNE PHARMACY | $36,266.44 |
| COMMERCE TOWNSHIP PHARMACY | $31,507.76 |
| DAVENPORT PHARMACY | $20,558.16 |
| FRIENDLY PHARMACY | $17,582.40 |
| DIAMOND PHARMACY | $15,434.38 |
| KESHINUDAN INC. | $9,834.38 |
| PRESTIGE PHARMACY | $4,945.40 |
| RESPONSIBLE CARE PHARMACY | $4,460.06 |
| **Total Paid:** | **$37,770,815.65** |

EXHIBIT - B
(4-pages)

GOVERNMENT
EXHIBIT

23A

| BCBS - Total Paid By Pharmacy | |
| --- | --- |
| Pharmacy | Paid Amount |
| Rapid Pharmacy | $994,913.17 |
| Be Well Pharmacy | $751,747.46 |
| Best Care Pharmacy | $729,349.11 |
| Taylor Pharmacy | $706,198.78 |
| Levan Pharmacy | $614,366.14 |
| Dearborn Community Pharmacy | $355,571.81 |
| Caring Pharmacy | $329,363.26 |
| Preffered Pharmacy | $317,225.10 |
| Highland Park Pharmacy | $247,828.67 |
| Care For You Pharmacy | $221,789.33 |
| Detroit Care Pharmacy | $214,702.55 |
| Preferred Pharmacy | $178,285.70 |
| Caring Pharmacy | $169,712.94 |
| Tri-City Pharmacy | $126,660.47 |
| Independent Pharmacy | $103,791.07 |
| Grand River Pharmacy | $70,013.54 |
| RX Pharmacy | $67,113.57 |
| Sapphire Pharmacy | $52,362.53 |
| Commerce Township Pharmacy | $44,990.33 |
| Glendale Pharmacy | $37,196.41 |
| Airport Pharmacy | $10,090.01 |
| Davenport Pharmacy | $7,482.51 |
| Eastpointe Pharmacy | $4,848.97 |
| Prestige Pharmacy | $4,268.71 |
| Responsible Pharmacy | $0.00 |
| Total Paid: | $6,359,872.14 |