UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BABUBHAI PATEL,

        Movant,

v.

UNITED STATES OF AMERICA,

        Respondent.

                                       /

Cr. Case No. 11-20468
Civil Case No. 15-13230

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE [1475]; DENYING AS MOOT MOTION FOR SUBPOENA [1520]; DENYING AS MOOT MOTION FOR AN EVIDENTIARY HEARING [1582]**

On August 10, 2012, Movant was found guilty by a jury of health care fraud conspiracy and conspiracy to distribute controlled substances, as well as ten substantive health care fraud counts and fourteen substantive drug distribution counts. On February 1, 2013, he was sentenced to 204 months imprisonment.

On September 11, 2015, Movant filed a Motion to Vacate Sentence under 28 U.S.C. 2255 [1475], to which the Government responded [1506] on November 30, 2015. Movant filed a reply on December 15, 2015. On December 28, 2015, the Court entered an Order that denied several pending Motions, including, *inter alia*, a Motion for New Trial and a Motion to Dismiss [1517]. Movant appealed the Order on January 5, 2016 [1518]. On February 25, 2016, the Sixth Circuit dismissed the appeal as it pertained to part of the Order denying Movant's motions that related to his pending §2255 motion, and retained the appeal as it applied to the portion of the order denying

Movant's other post-judgment motions. [1535]. The Sixth Circuit affirmed the Court's order on October 4, 2016 [1565], and the mandate issued on March 23, 2017. [1601]. Movant also filed a Motion for Subpoena *duces tecum* prior to conducting evidentiary hearing in 2255 proceedings on January 11, 2016 [1520]. A Motion for an Evidentiary Hearing was filed on December 6, 2016 [1582].

For the reasons stated below, Movant's Motion to Vacate, Set aside, or Correct Sentence [1475] is **DENIED** and Movant is denied a certificate of appealability; Movant's Motion for Subpoena [1520] and Motion for an Evidentiary Hearing [1582] are **DENIED as moot.**

## FACTUAL BACKGROUND

On appeal from Defendant's conviction, the Sixth Circuit summarized the background of this case, in pertinent part, as follows:

> The conspiracies began in January 2006 and ended in August 2011 when Patel and his associates were arrested, effectively ending their illegal activities. The number of pharmacies controlled by Patel varied over time, and he changed their corporate structures frequently. Patel hired all of the staff and supervised the pharmacy operations.
>
> The scheme to defraud insurers depended on the participation of physicians, pharmacists, recruiters, and patients. Patel paid cash bribes to physicians to entice them to write patient prescriptions for expensive medications and controlled substances that could be billed to Medicare, Medicaid, or private insurers through the Patel pharmacies. He paid kickbacks to managers of health-related companies so that they would send patients to his pharmacies, and he employed "marketers" to recruit "patients" directly from the streets.
>
> Pharmacists facilitated the criminal activity by charging insurers for expensive Medications that were ordered from wholesale distributors

and held in inventory but not dispensed to patients. These surplus medications were later returned to the supplier for credit or sold on the black market. Pharmacists also billed insurers for controlled substances that the pharmacists knew were illegally prescribed. These controlled medications included Hydrocodone (Vicodin, Lortab), oxycodone (Oxycontin), alprazolam (Xanax), and codeineinfused cough syrup. When filling prescriptions, the pharmacists usually "shorted" the number of dosage units placed in the medication vials for patients, billed the insurers for the full drug quantities prescribed, and then sold the excess pills on the street.

A significant portion of the prescription fraud was perpetrated through Visiting Doctors for America (VDA), a physician group that purported to provide home doctor visits to patients. Marketers recruited "patients" from homeless shelters and soup kitchens by offering them small amounts of cash or controlled substances. The marketers transported the "patients" to a VDA physician, who performed cursory examinations of the "patients" while they sat together in one room. VDA staff provided the co-conspirators with dummy patient files and blank prescription pads previously signed by a physician or physician's assistant. Mehul Patel and later Arpit Patel, neither of whom is a physician, wrote prescriptions for controlled medications and expensive non-controlled medications on these blank, pre-signed prescription pads. The prescriptions were taken to the Patel pharmacies, where the pharmacists used the dummy patient files to enter patient profiles into the computer database, billed for all of the medications prescribed, but filled only the controlled medications. The controlled substances were then distributed, or sold on the street.

Patel paid his pharmacists salaries, bonuses, and twenty percent of pharmacy profits to encourage them to engage in fraudulent practices. The pharmacies distributed nearly 500,000 dosage units of Schedule II controlled substances (including oxycodone), approximately 4.9 million dosage units of Schedule III controlled substances (including hydrocodone), nearly 2.3 million dosage units of Schedule IV controlled substances (including alprazolam), and approximately 2.5 million dosage units of Schedule V controlled substances. Between 2006 and 2011, the Patel pharmacies billed Medicare approximately $37,770,557; Medicaid approximately $23,134,691; and Blue Cross/Blue Shield of Michigan approximately $6,359,872.

Babubhai Patel was convicted of health care fraud conspiracy in violation of 18 U.S.C. § 1349 (count 1), drug conspiracy in violation of 21 U.S.C. § 846 (count 15), ten counts of aiding and abetting health care fraud in violation of 18 U.S.C. § 1347 & § 2 (counts 2–5, 7–9, 12–14), and fourteen counts of aiding and abetting the unlawful distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2 (counts 20–32, 34). He was acquitted on three counts of aiding and abetting health care fraud (counts 6, 10–11) and five counts of aiding and abetting the unlawful distribution of oxycodone and hydrocodone (counts 16–19, 33). The district court sentenced him to a total term of imprisonment of 204 months, supervised release of three years, and payment of restitution in the total amount of $18,955,869.

1. **MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

    a. **STANDARD OF REVIEW**

To succeed on a motion to vacate, set aside, or correct a sentence, a movant must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006) (quoting Mallett v. United States, 334 F.3d 491, 496-97 (6th Cir. 2003)).

    b. **ANALYSIS**

All ten of Movant's claims are based on the premise that his counsel was constitutionally ineffective in violation of his Sixth Amendment. Ineffective representation is a legitimate basis for a § 2255 claim and will not generally be considered on direct appeal. *United States v. Galloway*, 316 F.3d 624, 634 (6th Cir. 2003). The Court will address each claim for ineffective assistance of counsel below.

To establish ineffective assistance of counsel, a movant must show that defense counsel rendered deficient performance and thereby prejudiced the movant's defense, so as to render the outcome of the proceedings unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Counsel's failure to object to an error at sentencing or failure to raise a viable argument that would reduce his client's sentence may constitute deficient performance." *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (citing *United States v. Thomas*, 38 Fed. Appx. 198, 203 (6th Cir. Mar. 15, 2002)). However, a court owes "substantial deference to counsel's decisions not to raise an argument, even a meritorious argument, if the decision might be considered sound trial strategy." *Id.* (quoting *Hodge v. Hurley*, 426 F.3d 368, 385 (6th Cir. 2005)) (internal quotation marks omitted). Therefore, counsel's omission of an argument for a lighter sentence constitutes deficient performance only if the omission was objectively unreasonable. *See id.* If a movant establishes that counsel's performance was in fact deficient, he need not prove that an effective counsel likely would have changed the outcome; he need only show a probability of a different outcome sufficient to undermine confidence in the results of the proceedings. *See Nix v. Whiteside*, 475 U.S. 157, 175 (1986) (citing *Strickland*, 466 U.S. at 694).

### i. **Failure to challenge Count One of the Indictment as being duplicitous prior to trial**

Movant alleges that Counsel was ineffective because the failure to file a Motion to Dismiss for reasons of duplicity in the indictment pursuant to Fed. Crim. R. P.

12(b)(3)(B)(i) before the start of the trial. Movant maintains that Count One of the indictment is duplicitous because the conspiracy, as provided in the indictment, had two primary purposes, (1) submitting false and fraudulent claims and (2) offering and paying kickbacks and bribes. By permitting a duplicitous count to remain, Movant alleges his constitutional rights were violated, placing him in danger of, *inter alia*, implicating the protections of the Sixth Amendment guarantee of jury unanimity by "preventing the jury from convicting on one offense and acquitting on another." *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002), *quoting United States v. Shumpert Hood*, 210 F.3d 660, 662 (6th Cir.2000). However, Movant is mistaken in categorizing Count One of the Indictment as duplicitous and this claim must fail.

An indictment is duplicitous only if it "joins in a single count two or more distinct and separate offenses." *Id*. However, in cases of conspiracy, even if the allegation in a count of conspiracy includes several crimes, the count is not duplicitous since the crime charged in the count is the conspiracy, which is a single crime "however diverse its objects." *Braverman v. United States*, 317 U.S. 49, 54, 63 S. Ct. 99, 102, 87 L. Ed. 23 (1942); *see also United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002) (a single conspiracy that is made up of an agreement to commit several different crimes is not duplicitous).

Firstly, Movant argues that a case from the Fifth Circuit, *United States v. Njoku*, charged conspiracy to commit health care fraud and conspiracy to receive or

pay health care kickbacks as two separate conspiracies. *United States v. Njoku*, 737 F.3d 55, 63 (5th Cir. 2013) *cert. denied sub nom. Ellis v. United States*, 134 S. Ct. 2319, 189 L. Ed. 2d 196 (2014). This Court will not opine on the reasons behind the charging practices of the Government in that case. The case does not address the issue of the possible duplicity of a charge similar to Movant's, and contains vastly different facts concerning the execution, means and make-up of the conspiracy and those involved. Therefore, the Court will look to the terms of the indictment to determine whether there is duplicity in the Count at issue.

Under the "Purpose of the Conspiracy" heading, Count 1 of Defendant's Indictment for Health Care Fraud Conspiracy under 18 U.S.C. § 1349 charges:

> It was a purpose of the conspiracy for defendants BABUBHAI PATEL…and others to unlawfully enrich themselves by, among other things, (a) submitting false and fraudulent claims to Medicare, Medicaid, and private insurers for prescription medication, physician office visits, physician home visits, and other services; (b) offering and paying kickbacks and bribes to Medicare and Medicaid beneficiaries for the purpose of such beneficiaries arranging for the use of their Medicare and Medicaid beneficiary numbers by the conspirators as the bases of claims filed for prescription medication and other services; (c) soliciting and receiving kickbacks and bribes in return for arranging for the furnishing of services for which payment may be made by Medicare and Medicaid by providing their Medicare and Medicaid beneficiary numbers, which formed the basis of claims filed for prescription medication, physician home visits, physician office visits, and other services; (d) concealing the submission of false and fraudulent claims to Medicare, Medicaid, and private insurers, the receipt and transfer of het proceeds from the fraud, and the payment of kickbacks; and (e) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators [1418, ¶72].

When considering the legality of a single count containing one or more conspiracies, Courts look to: (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in various dealings. *United States v. Smith*, 320 F.3d 647, 652 (6th Cir. 2003).

In considering Count One of Movant's indictment, the common goal alleged is for the participants in the conspiracy to "unlawfully enrich themselves" by unlawfully taking from Medicare, Medicaid, and private insurers. The nature of the scheme included a variety of means to achieve this goal including: submission of false and fraudulent claims for prescription medication, physician office visits, and other services; offering and paying kickbacks and bribes; solicitation and receipt of kickbacks and bribes; concealment of the submission of false and fraudulent claims; and diversion of the proceeds of the fraud for the personal use and benefit of the Defendants and their co-conspirators.

Finally, in the conspiracy detailed in Count One, there is a substantial overlap of participants in the conspiracy, with the primary participant being Movant, who owned and oversaw the operations of the pharmacies and other means to achieve the conspiracy. Thus, the alleged duplicitous counts were merely a method for the Movant and other Defendants to achieve the overarching goal of a single conspiracy, rather than separate conspiracies in and of themselves. Therefore, Count One is not duplicitous and there is no valid claim for ineffective counsel because any motion for dismissal based on the duplicity of Count One would have been baseless.

### ii. Failure to investigate available exculpatory evidence, interview and call witnesses, develop and present available defense and challenge the government's case through the adversarial process

Movant claims that Trial Counsel provided ineffective assistance because he failed to investigate and call witnesses from the McKesson Corporation, which would have been invaluable to Movant's defense. As this Court stated in its Order Denying Defendant's earlier Motion to Produce [676] the McKesson evidence prior to sentencing: "whether Defendant returned drugs that were billed but not dispensed, or retained the proceeds from said returns, is not relevant to his guilt at trial or his sentencing" since the primary fraud scheme for which Defendant was indicted was completed when insurers were billed for prescription drugs that were not dispensed. The McKesson invoices only relate to the case at bar as a means to cover up the crime in case of an audit and hence would have not led to an acquittal.

With respect to the McKesson employees, the logical support for a claim that possibly exculpatory evidence could have been obtained by an interview of McKesson employees fails for the same reason as the similar claim relating to the McKesson records. There is no evidence that would change the verdict had those interviews taken place, as the business that McKesson operated with Movant's pharmacies was not an element of the crime he was convicted for. Therefore, any evidence obtained could not have changed the verdict, and this claim of ineffective assistance is without merit.

### iii. Failure to file a pre-trial Motion for Severance

Movant maintains that trial counsel was ineffective for failing to file a pre-trial Motion for Severance under Fed. R. Crim. P. Rule 14, when he knew that Movant's co-Defendants would be testifying against Movant in their defense.

Under Fed.R.Crim.P. 8(b):

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Charges against multiple defendants may be tried together if the defendants "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." *United States v. Medlock*, 792 F.3d 700, 711 (6th Cir. 2015), (quoting FED. R. CRIM. P. 8(a)). "Under Rule 8(b), defendants who are indicted together, ordinarily should be tried together." *United States v. Gardiner*, 463 F.3d 445, 472 (6th Cir. 2006) (quoting *United States v. Breinig*, 70 F.3d 850, 852 (6th Cir. 1995)) (internal quotation marks and brackets omitted). A defendant moving to sever his trial from that of a co-defendant "must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *Id.* (quoting *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005)). The mere fact that the government has stronger evidence against the co-defendant than against the moving defendant, or that the moving defendant would

have a greater chance of acquittal if tried separately, does not establish sufficient prejudice. *Id.* (citing *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992)). Further, "[h]ostility among defendants or the attempt of one defendant to save himself by inculpating another does not require that defendants be tried separately. " *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992) (citing *United States v. Davis*, 623 F.2d 188, 194 (1st Cir.1980); *United States v. Vinson*, 606 F.2d 149, 154 (6th Cir.1979)).

"The burden is on defendants to show that an antagonistic defense would present a conflict 'so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Id* at 1196 (citations omitted); *see also United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988) (explaining that the "mere fact that each defendant 'points the finger' at the other is insufficient;" rather, the defendant must show that the antagonism will likely mislead or confuse the jury).

Movant's argument presented in his 2255 motion and reply focuses solely on the fact that his attorney knew prior to the trial that co-Defendants would be attempting to save themselves from a guilty verdict by incriminating Movant in testimony. This is not is not an incident of sufficient prejudice under Sixth Circuit precedent to require granting a motion to sever. Therefore, there is no evidence of ineffective assistance of counsel for failure to for a severance.

### iv. Failure to object when Trial Judge interfered with the jury's fact finding function

Movant claims that his trial counsel was ineffective for failing to object when the Court refused to permit a government witness to answer a question from the jury. Government witness Mr. Lafell Peoples, a financial analyst who served as forensic accountant on Movant's case, gave testimony that included some discussion of records from McKesson Pharmaceutical Corporation. Movant maintains that Mr. Peoples possessed knowledge of why the government had not subpoenaed McKesson and other drug companies for tax records, as well as all of Movant's records, expenses, tax receipts and books concerning his pharmacies. The Government attorneys objected to these questions, stating they would have the requisite personal knowledge with which to answer those questions rather than the witness. When the Court did not allow the witness to be asked this question, Movant's Trial Counsel did not object. Movant maintains that this failure amounts to ineffective assistance of Counsel.

However, the Government attorneys at trial argued, and the Court agreed, that the decision about whether to subpoena records from the McKesson Corporation was outside of the witness' personal knowledge, as he was only testifying as a forensic accountant. Specifically, when describing his role in the investigation, Mr. Peoples stated that he was given the assignment "to summarize, analyze accounts, bank records and financial institution records related to a variety of pharmacies and the

subjects related to those pharmacies." [918 at 154 ¶3-5]. He was neither in charge of the investigation, nor an Agent for the Federal Bureau of Investigation, but rather a financial analyst. He fulfilled his assignment related to the investigation and testified to that knowledge. The issue of subpoenaing records from a drug company that dealt with distribution was not related to bank institutions or financial statements and was, accordingly, outside of his personal knowledge.

The Court concludes that this information is outside of the personal knowledge of Mr. Peoples, and that the ruling excluding these jury questions during trial was appropriate. As a result, any objection would have been unfounded, and thus there is no valid claim for ineffectiveness of counsel for this claim.

### v. Failing to request a mistrial when the Trial Judge interfered with the jury's fact finding function

This ground for ineffectiveness of counsel relies on the failure to make a motion for a mistrial based on the same facts presented in section 1(b)(iv) above. The Court refers to the reasoning set forth above, and concludes that the questions from the jury were properly excluded, and a motion for a mistrial based on this claim would have been denied; therefore there is no evidence of ineffectiveness of counsel from this claim.

### vi. Failure to investigate, interview and call witnesses for the defense

Movant claims that counsel was ineffective because Trial Counsel failed to investigate, interview and call witnesses for the defense from either McKesson

Corporation or beneficiaries of Medicaid, Medicare and Blue Cross/Blue Shield. Movant maintains that these witnesses would have shown that he was innocent through their testimony about drugs obtained from Movant's pharmacies that were actually dispensed.

As this Court has previously explained in a prior Order [676], "whether the defendant returned drugs that were billed but not dispensed, or retained the proceeds from said returns, is not relevant to his guilt at trial or his sentencing." Therefore, any testimony from McKesson employees concerning return of dispensed drugs would not have been of substantial aid to Movant at trial and is not ineffective assistance. (for further discussion of McKesson evidence see Section 1(b)(ii) above).

With respect to the testimony from patients who actually received dispensed medicine, Movant was indicted for Health Care Fraud Conspiracy as well as for Conspiracy to Distribute Controlled Substances. This necessarily entailed dispensing prescriptions to patients and patient recruiters. Therefore, if witnesses had been called and testified to having been dispensed medicine from one of Movant's pharmacies, it would not disrupt the other conspiracy charge. Moreover, testimony from a few beneficiaries who were dispensed medicine would not overcome all the evidence amassed at trial that the jury believed pointed to the guilt of Movant, including testimony and wiretap evidence. Therefore, it was not ineffective of counsel to investigate, interview and call these witnesses because it would not have changed the outcome of the trial if these witnesses had the opportunity to testify.

> vii. **Failure to request a mistrial when the Government revealed it had withheld the McKesson Pharmaceutical Corporation Administrative Investigation Report and McKesson records**

Movant maintains that Trial Counsel was ineffective by not requesting a mistrial for the failure of the Government to disclose McKesson Administrative Materials and McKesson Records, because they would have been exculpatory. With respect to the McKesson records, this claim is based on the same evidence at issue in the Renewed Motion to Subpoena Records and Motion for a New Trial, both denied by the Court in an Order entered on December 28, 2015 [1517] and addressed in Section 1(b)(ii) above. The Court refers to the reasoning employed above in Section 1(b)(ii) to reject this claim concerning the McKesson records.

Regarding the McKesson Pharmaceutical Corporation Administrative Investigation Report, all Trial Counsel were given access to the administrative file under a protective order during trial, and not a single defense attorney used any aspect of that file in their defense. Thus, the evidence of the Investigation Report was not suppressed, and the failure of Trial Counsel to request a mistrial regarding the withholding of this evidence is not ineffective assistance.

> viii. **Failure to ask prospective jurors if they were participants in various Government Health Care Programs during voir dire**

Movant contends that the failure of his Trial Counsel to ask prospective jurors during voir dire if they were participants in various Government Health Care Programs amounts to ineffective counsel, because this strategic decision infused the

entire trial with unfairness. Voir dire questions represent the essence of strategic decision-making, and counsel is entitled to "particular deference" in how they decide to conduct their questioning. *Keith v. Mitchell*, 455 F.3d 662, 676 (6th Cir. 2006). An attorney's actions during voir dire are considered part of the trial strategy, and as such, in order to prevail on a claim of ineffective counsel, a counsel's decision must be shown to be "so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001).

Movant has not provided any reason to suspect that the absence of a question to jurors inquiring if they were participants in various Government health care programs rendered the trial unfair. There are sound reasons that justify a failure to ask this question. For instance, Counsel may have initially considered asking the question, but then decided against it because they did not want the jury to focus on a link between their health insurance and the alleged fraud; Counsel could have been satisfied with the jury, and believed that they would make an honest and unbiased decision; or Counsel could have decided against the question because of the possibility that many jurors in fact had health care from a Government health care programs, and that it would be impossible to remove them all from the jury. Because *Strickland* "scrutiny of counsel's performance must of necessity be highly deferential," and because Movant has failed to offer any evidence to rebut the presumption that Counsel's decision to refrain asking jurors about their personal health care providers during voir

dire was sound trial strategy, the Court rejects this claim of ineffective assistance. *Strickland*, 466 U.S. at 689.

### ix. Failure to object in regards to Government's expert witnesses

Movant claims that Government witnesses Mr. Stankweicz and Ms. Warstler, testified as opinion witnesses, rather than as fact witnesses as presented at trial. He also argues that Dr. Drake was not noticed as an expert witness, that his counsel was not provided a summary of his opinions, and that his counsel was therefore ineffective by failing to object to both these points.

First, as the Government has observed, defense counsel was notified that Dr. Drake would present testimony as an expert witness. In fact, during the trial, defense counsel filed a motion *in limine* in which he stated that he had received notice regarding the expert testimony of Dr. Drake, and had received the summary of his opinion in February 2012. [917 at 5-7]. Therefore, there is no basis for a claim that defense counsel was not properly notified about the testimony of expert witness Dr. Drake.

Second, as to the Government witnesses Mr. Stankweicz and Ms. Warstler, in neither the 2255 motion nor the reply does Movant direct the court's attention to any testimony showing that these witnesses gave improper opinion testimony. These witnesses were called to answer questions about the Medicare, Medicaid, and BCBS programs for which they worked because they worked daily with the issues that arose in administration of their programs. There is no evidence presented that their

testimony encompassed anything other than basic facts about how the programs operated, with which they were intimately familiar. Therefore, there is no basis of ineffective assistance of counsel concerning these Government witnesses.

### x. Failure to investigate the Government's evidence during sentencing regarding loss

Movant alleges that his sentencing counsel was ineffective for failing to investigate the Government's evidence of "loss amount." Movant argues that such an investigation would have yielded evidence that showed there was no loss and no fraud that could be attributed to Movant.

The Court addressed this point prior to sentencing, and the reasoning presented there in denying that request is controlling here. The loss used for sentencing was predicated in part on Movant's own comments concerning the profit margin of his pharmacies, and resulted in an estimate that 25% of the billings at the pharmacies were fraudulent.

As the Government explains in their response, the loss used for sentencing guidelines purposes is the intended loss, not the actual loss, and is a mere "reasonable estimate" supported by a preponderance of the evidence. *United States v. Raithatha*, 385 F.3d 1013, 1024 (6th Cir. 2004) (internal citations omitted) (vacated and remanded on other grounds, 543 U.S. 1136). Movant has not suggested any reason why the profits should have been taken into account when determining the intended loss. Rather, he seemingly attempts to show that there is no "fraud loss," and therefore

no fraud, based on calculations that have no bearing on the issue of his alleged ineffective assistance of counsel. As stated above, the intended loss amount is calculated to reflect the 25% profit amount, and constitutes an estimate based on certain percentages of total billings from Movant's pharmacies. The amount of profit that the pharmacy received has no bearing on the loss that the Movant intended, and there is no reason why the profit amount should be added to the intended loss amount at any time in any calculations. Therefore Movant's argument concerning the non-inclusion of the profit margin has no bearing on the loss amount determined at sentencing. Further, Movant's attorney continually addressed the issue of the intended loss amount, through his sentencing memorandum, at the sentencing hearing itself, and through a motion to produce that was denied by the Court.

Finally, Movant appears to argue that the loss amount calculated is incorrect. However, the intended loss amount reflects 100% of VDA billings plus 25% and the non-VDA billings. Movant's argument does not reflect this, and therefore is an inaccurate calculation. For the reasons above, Movant has not shown ineffective assistance of counsel for failing to investigate the Government's loss amount during sentencing, the Motion to Vacate Judgment is **DENIED,** and Movant is denied a certificate of appealability.

2. **MOTION FOR SUBPOENA** *DUCES TECUM* **PRIOR TO CONDUCTING EVIDENTIARY HEARING IN 2255 PROCEEDINGS [1520]; MOTION FOR AN EVIDENTIARY HEARING [1582]**

On January 11, 2016, Movant filed a Motion for Subpoena Duce Tecum prior to Conducting Evidentiary Hearing in §2255 proceedings [1520], requesting production of records from the McKesson Corporation. Movant filed a Motion for an Evidentiary Hearing [1582] on December 6, 2016. The Court has denied Movant's §2255 Motion. Therefore, Movant's Motion for Subpoena [1520] and Motion for an Evidentiary Hearing [1582] are **DENIED as moot.**

**IT IS ORDERED** that Movant's Motion to Vacate Sentence [1475] is **DENIED.**

**IT IS FURTHER ORDERED** that certificate of appealability is denied.

**IT IS FURTHER ORDERED** that Movant's Motion for Subpoena [1520] and Motion for an Evidentiary Hearing [1582] are **DENIED as moot.**

**SO ORDERED**

Dated: July 7, 2017

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge